**YAMAHA INTERNATIONAL CORPORATION, Appellant,**

v.

**HOSHINO GAKKI CO., LTD., assignee of Hoshino Gakki Ten Inc., Appellee.**

No. 87–1128.

United States Court of Appeals, Federal Circuit.

March 7, 1988.

Robert D. Hornbaker, Freilich, Hornbaker, Rosen & Fernandez, Los Angeles, Cal., for appellant.

Charles L. Gholz, Oblon, Fisher, Spivak, McClelland & Maier, P.C., Arlington, Va., for appellee.

Before MARKEY, Chief Judge, BENNETT, Senior Circuit Judge, and NEWMAN, Circuit Judge.

BENNETT, Senior Circuit Judge.

Yamaha International Corporation (Yamaha) appeals from a decision of the United States Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (TTAB or board) in *Yamaha International Corp. v. Hoshino Gakki Co.*, 231 USPQ 926 (TTAB 1986), dismissing Opposition Nos. 70,401 and 70,402 filed by Yamaha. We affirm.

## BACKGROUND

Applicant-appellee Hoshino Gakki Co., Ltd. (Hoshino), makes guitars in connection with which it employs its registered trademark "IBANEZ." On June 13, 1979, Hoshino filed Application Serial Nos. 219,414 and 219,435, seeking to register as trademarks two guitar peg head configurations/designs for electric and acoustic guitars. *See* 231 USPQ at 927 & n. 2. In May 1984, Hoshino amended its applications to seek registration on the basis of acquired distinctiveness (secondary meaning) under Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f).[1]

In September 1984, the PTO published the marks in the Official Gazette for opposition in accordance with 15 U.S.C. § 1062(a). *See also* 37 C.F.R. § 2.80. In November 1984, Yamaha, a competing guitar maker, filed two essentially identical notices of opposition in accordance with 15 U.S.C. § 1063,[2] alleging, *inter alia*, that

---

1. 15 U.S.C. § 1052, Section 2 of the Lanham Act, provides, in part pertinent to the following discussion, that:

    No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused ... unless it—
    ....
    (d) Consists of or comprises a mark which so resembles a mark registered in the [PTO] or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive....

    (e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them....
    (f) Except as expressly excluded in paragraphs (a), (b), (c), and (d) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce....

2. 15 U.S.C. § 1063 provides, in pertinent part, that:

    Any person who believes that he would be damaged by the registration of a mark upon the principal register may, upon payment of

the guitar peg head designs sought to be registered as trademarks had not become distinctive of Hoshino's goods within the meaning of Section 2(f). Hoshino denied Yamaha's allegations. In May 1985, the board consolidated the proceedings in the two oppositions.

### The Board's Opinion

In its opinion, the board first considered and rejected various evidentiary objections from Yamaha contesting the admissibility of Hoshino's evidence. 231 USPQ at 927–930. After concluding that Yamaha had standing to challenge registration of Hoshino's proposed marks, the board outlined its views on the appropriate "burdens of proof" to be used in an opposition under Section 2(f).

In an opposition, said the board, the burden of proof rests on the opposer as the plaintiff party, and Yamaha therefore had the burden of showing, at least prima facie, that Hoshino's marks had not become distinctive under Section 2(f). 231 USPQ at 931–32 & n. 12. In rejecting Yamaha's argument that Hoshino had the burden of proving acquired distinctiveness, the board said Hoshino had already done so to the PTO's satisfaction in ex parte proceedings. Id. at 931–32. In the board's view, Yamaha's evidence that Hoshino's competitors made guitar heads "like" those Hoshino sought to register was deemed insufficient to establish a prima facie case of no acquired distinctiveness, especially in the absence of assertions of confusing similarity between the guitar heads of the competitors and those of Hoshino. Id. at 932–33. Therefore, said the board, Yamaha had not made out "its prima facie case that applicant's design marks had not acquired secondary meaning and the requisite distinctiveness to warrant registration." Id. at 933.

The board alternatively held that "even if the burden of proof has been transferred to applicant in this proceeding, applicant's evidence sustains its Section 2(f) claim." Id. at 935. The board made its alternative holding "[i]n the interest of judicial econo-

the required fee, file an opposition in the

my and in the event that it may be subsequently determined [i.e., on appeal] that the opposer established, by its record, a prima facie case that applicant's head stock designs had not acquired sufficient distinctiveness to function as trademarks or indications of source." Id. at 933. In the board's view, the "body of evidence, taken cumulatively, [was] adequate to sustain applicant's burden of establishing that its peg head designs have acquired the requisite secondary meaning for registration." Id. at 933–34.

The board dismissed Yamaha's oppositions on October 9, 1986.

### ISSUE

Whether the board erred in dismissing Yamaha's oppositions.

### OPINION

■ At the outset, we observe that the board's discussion of the applicant's and the opposer's "burdens of proof," and of the "shifting" of those burdens as the various stages of an opposition under Section 2(f) unfold, is itself burdened with an inexactness that has helped to mask the relevant issues in this appeal. Nevertheless, the function of this court on appeals from the TTAB is to review the board's decision, not its reasoning. *Ilco Corp. v. Ideal Security Hardware Corp.*, 527 F.2d 1221, 1225, 188 USPQ 485, 488 (CCPA 1976). *See* 15 U.S.C. § 1071(a)(4); *see also Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540, 218 USPQ 871, 880 (Fed.Cir.1983) ("[w]e sit to review judgments, not opinions"). Therefore, it is that task to which we now turn.

### I. The Opposition Proceeding

The PTO rules governing the procedure in inter partes proceedings such as oppositions are adapted from the Federal Rules, with modifications appropriate to the administrative process. Thus, the Federal Rules of Civil Procedure are authorized to be followed "wherever applicable and ap-

[PTO], stating the grounds therefor. . . .

propriate," 37 C.F.R. § 2.116(a), are used to govern discovery matters "except as otherwise provided," 37 C.F.R. § 2.120, and are applied to evidentiary matters in conjunction with the Federal Rules of Evidence, 37 C.F.R. § 2.122(a). The opposer in any opposition proceeding is in the position of plaintiff, and the applicant is in the position of defendant. 37 C.F.R. § 2.116(b).

An opposition proceeding is initiated by a simple statement, comparable to the filing of a complaint:

37 C.F.R. § 2.104 *Contents of opposition.*

> The opposition must set forth a short and plain statement showing how the opposer would be damaged by the registration of the opposed mark and state the grounds for opposition.

The applicant is entitled to file an answer, and to present affirmative defenses and counterclaims. 37 C.F.R. § 2.114(a), (b). In fact, the opposition and the answer correspond to the complaint and answer in a court proceeding, the assignment of testimony periods corresponds to setting a case for trial, and the submission of evidence during the assigned testimony periods corresponds to the trial in court proceedings. 37 C.F.R. § 2.116(c), (d), (e). Briefs are filed by both parties, and the plaintiff party can file a reply brief. 37 C.F.R. § 2.128. The oral hearing, following the briefing, corresponds to the oral summation in court proceedings. 37 C.F.R. § 2.116(f).

## II. *Opposer's Burden for Prima Facie Case under Section 2(f)*

■ Hoshino, seeking to register its configurations/designs under Section 2(f), bore the burden of establishing acquired distinctiveness in ex parte proceedings before the PTO. *E.g., In re Meyer & Wenthe, Inc.,* 267 F.2d 945, 949, 122 USPQ 372, 374, 46 CCPA 919 (1959). When registration is sought under Section 2(f), the board publishes the mark for opposition when it is satisfied that the applicant has presented a prima facie case of acquired distinctiveness. *In re Capital Formation Counselors, Inc.,* 219 USPQ 916, 919 (TTAB 1983) ("an applicant need not conclusively establish distinctiveness but need only establish

a prima facie case" in order to warrant publication of mark for opposition); *In re Industrial Washing Machine Corp.,* 201 USPQ 953, 956 (TTAB 1979) ("[a] prima facie showing of distinctiveness is all that is necessary for the publication of the application"); *see also* 15 U.S.C. §§ 1052(f), 1062(a). If no opposition is filed following publication, the proposed mark will be registered. 37 C.F.R. § 2.81.

However, in the opposition proceeding at issue here, Yamaha argues the board erred in requiring it, as the opposer, to prove that Hoshino's marks had not acquired distinctiveness. We agree with Yamaha that the sole issue in this opposition is whether Hoshino did or did not prove acquired distinctiveness. Although the distinction between the two "burdens" was not clearly outlined by the board in its opinion, we do not believe that the board required Yamaha to "prove" a lack of acquired distinctiveness. Whatever may be said of "burdens," it appears to us that one opposing a Section 2(f) registration published for opposition on the basis of that section must have at least the initial burden of challenging or rebutting the applicant's evidence of distinctiveness made of record during prosecution which led to publication of the proposed mark.

An opposer to an application submitted under Section 2(f) sufficiently meets its initial burden if it produces sufficient evidence or argument whereby, on the entire record then before the board, the board could conclude that the applicant has not met its ultimate burden of showing acquired distinctiveness. *Cf. Sanyo Watch Co. v. Sanyo Electric Co.,* 691 F.2d 1019, 1022, 215 USPQ 833, 834 (Fed.Cir.1982) (opposer's prima facie case requires "facts from which the board might reasonably conclude" that applicant was not entitled to the registration sought). Thus, the board's requirement that Yamaha establish a prima facie case of no acquired distinctiveness does not require Yamaha to "prove" anything, but simply requires Yamaha to present sufficient evidence or argument on which the board could reasonably conclude that Hoshino had not proven at least one of

the elements necessary to obtain a trademark registration.

■ Nevertheless, citing *R.J. Reynolds Tobacco Co. v. Philip Morris Inc.*, 210 USPQ 34, 41 (TTAB 1981), *Anchor Hocking Glass Corp. v. Corning Glass Works*, 162 USPQ 288, 291 (TTAB 1969), and *Federal Glass Co. v. Corning Glass Works*, 162 USPQ 279, 283 (TTAB 1969), Yamaha argues that its burden was only to establish a lack of inherent distinctiveness. But an opposer's burden of establishing no inherent distinctiveness, or of showing that the mark is "merely descriptive" under Section 2(e), exists only where an applicant seeks registration on the basis of inherent distinctiveness, as was the case in the *Corning Glass* cases.

Where, as here, an applicant seeks a registration based on acquired distinctiveness under Section 2(f), the *statute* accepts a lack of inherent distinctiveness as an established fact.[3] When registration is sought under Section 2(f), therefore, it is idle to continue to speak of an opposer's burden to establish that fact, or to say that the applicant "conceded" that fact. Similarly, in cases where registration was initially sought on the basis of distinctiveness, subsequent reliance by the applicant on Section 2(f) assumes that the mark has been shown or conceded to be merely descriptive. Whether in ex parte proceedings under Section 2(f), *In re McIlhenny Co.*, 278 F.2d 953, 957, 126 USPQ 138, 141, 47 CCPA 985 (1960), *General Foods Corp. v.*

*MGD Partners*, 224 USPQ 479, 485 (TTAB 1984), *Sunbeam Corp. v. Battle Creek Equipment Co.*, 216 USPQ 1101, 1102 (TTAB 1982), or in subsequent oppositions, neither party bears any burden on inherent distinctiveness, as it is a nonissue under that subsection of the statute. The only remaining issue under Section 2(f) relating to the proposed mark itself is acquired distinctiveness.[4]

To prevent the immediate registration of the mark, the opposer has the initial burden to establish prima facie that the applicant did not satisfy the acquired distinctiveness requirement of Section 2(f). If opposer does not provide sufficient grounds to at least place the matter in issue, the situation is indistinguishable from one in which no opposition was filed. Under such circumstances, there is insufficient basis in the record to indicate that the applicant's mark, contrary to the examiner's prior determination, has *not* "become distinctive of the applicant's goods in commerce." 15 U.S.C. § 1052(f).[5]

If the opposer does present its prima facie case challenging the sufficiency of applicant's proof of acquired distinctiveness, the applicant may then find it necessary to present additional evidence and argument to rebut or overcome the opposer's showing and to establish that the mark has acquired distinctiveness. To accept Yamaha's argument that an opposer bears no burden of establishing even a prima facie case as to the sufficiency of applicant's prior proof would make a mere filing of a

---

**3.** Registration of designs or shapes such as the guitar heads involved here may necessarily require reliance on Section 2(f). *See In re Soccer Sport Supply Co.*, 507 F.2d 1400, 1403 n. 3, 184 USPQ 345, 347 n. 3 (CCPA 1975) ("section 2(f) has been applied to permit registration of a mark consisting solely of a design and, therefore, not within the purview of section 2(e)"). *See also In re DC Comics, Inc.*, 689 F.2d 1042, 1050–51, 215 USPQ 394, 401–02 (CCPA 1982) (Nies, J., concurring); *cf. Union Manufacturing Co. v. Han Baek Trading Co.*, 763 F.2d 42, 48, 226 USPQ 12, 16–17 (2d Cir.1985) (for protection under Section 43(a), "non-verbal marks that are unregistered always require proof of secondary meaning").

**4.** Yamaha nevertheless also argues that placing on it the burden of establishing a lack of ac-

quired distinctiveness was error because it required Yamaha to "prove a negative." But, even if the board had actually done so, no rule would necessarily bar such a requirement. *See, e.g., Whitaker v. Beavin*, 808 F.2d 762, 763 (11th Cir.1987); *Allred v. Department of Health & Human Services*, 786 F.2d 1128, 1130 (Fed.Cir. 1986). Indeed, the burden Yamaha alleges that it has is that of proving a negative proposition, i.e., that Hoshino's marks lacked inherent distinctiveness.

**5.** In fact, under such circumstances, applicant may elect to file a dispositive motion. 37 C.F.R. § 2.217(d); *cf. Sanyo Watch Co. v. Sanyo Electric Co.*, 691 F.2d 1019, 1021, 215 USPQ 833, 834 (Fed.Cir.1982) (where board entered judgment for applicant following failure of opposer to present any evidence).

naked opposition the sole basis for delaying registration and prompting an applicant to reestablish acquired distinctiveness to the satisfaction of the PTO in the face of insufficient evidence or argument by the opposer. We conclude, therefore, that the board was not incorrect in stating that Yamaha, as opposer of a Section 2(f) registration, had the burden to establish a prima facie case, the principal facet of which is showing that Hoshino did not establish acquired distinctiveness.

■ On the other hand, we believe that the board unnecessarily addressed the issue of whether the prima facie case had indeed been established by Yamaha. As noted above, the PTO rules governing the procedure in oppositions are designed to approximate the proceedings in a courtroom trial. Thus, whether a prima facie case has been made by the opposer only would be relevant to the resolution of a summary judgment motion filed by the applicant following the close of the opposer's testimony period. In *Sanyo*, 691 F.2d at 1022, 215 USPQ at 834, this court addressed the requirements of a prima facie case where the board had dismissed the opposition following failure of opposer to present any evidence during its testimony period.[6] Yet here, unlike the situation in *Sanyo*, no motion was made and no judg-

ment was entered after the opposer's testimony period.

Since we are reviewing the entire proceeding in the PTO in which both sides presented all their evidence, filed briefs, and made closing arguments, the only relevant issue before this court on appeal, as it should have been before the board, is which party should prevail on the entire record.[7] At this stage, evaluation of the entire record, not of the prima facie showings previously made by the respective parties, is the only issue relevant to the outcome.[8] Therefore, we do not address or adopt any of the board's discussion relating to whether, under the facts of the present case, Yamaha's showing was sufficient to place Hoshino's showing of acquired distinctiveness at issue. We review instead the board's alternative holding that Hoshino had established, on the entire record, the requisite acquired distinctiveness to support registration of its marks.

III. *The Ultimate Burden of Persuasion under Section 2(f)*

■ Yamaha strenuously asserts in its brief on appeal that the ultimate burden of persuasion under Section 2(f) on the issue of acquired distinctiveness is on Hoshino as applicant. We completely agree. "The burden of proving secondary meaning is on the party asserting it, whether he is the

6. *Cf. Petersen Manufacturing Co. v. Central Purchasing, Inc.,* 740 F.2d 1541, 1551, 222 USPQ 562, 570 (Fed.Cir.1984) (affirming summary judgment for defendant in Section 43(a) action where plaintiff presented no significant, probative evidence and defendant "presented sufficient evidence to negate, prima facie, the assertion of secondary meaning").

7. In Section 2(f) proceedings, as in any other opposition, once the opposer establishes its prima facie case, all evidence must be considered. *See, e.g., In re Seats,* 757 F.2d 274, 278 n. 5, 225 USPQ 364, 368 n. 5 (Fed.Cir.1985) ("the evidence of record"); *Quaker State Oil Refining Corp. v. Quaker Oil Corp.,* 453 F.2d 1296, 1299, 172 USPQ 361, 363, 59 CCPA 764 (1972) ("the board considered all the evidence of record"); *Hunter Publishing Co. v. Caulfield Publishing Ltd.,* 1 USPQ 2d 1996, 1999 (TTAB 1986) ("the evidence of record"); *General Foods,* 224 USPQ at 488 ("viewing the complete body of evidence before us"); *Sunbeam,* 216 USPQ at 1104 ("on this record").

8. Of course, if the entire record adduced after all testimony periods still lacks the elements of the prima facie case of one of the parties, the ultimate conclusion based on the entire record will be quite easily reached. However, the better practice is to limit the discussion to the issues relevant at the stage of the proceeding at issue. Similarly, situations such as *R.J. Reynolds, Anchor Hocking,* and *Federal Glass* involved oppositions where distinctiveness was a contested issue and opposer necessarily presented evidence of lack of inherent distinctiveness. In the face of the opposer's case, the applicant then attempted to rebut that showing through reliance on a showing of acquired distinctiveness under Section 2(f), which had not been at issue in the ex parte proceedings in the PTO. In such situations, the procedural posture of the opposition also precludes the need to separately evaluate or address the adequacy of the opposer's prima facie showing of no acquired distinctiveness.

plaintiff in an infringement action or the applicant for federal trademark registration." 1 Gilson, *Trademark Protection and Practice* § 2.09, at 2–72 (1987). As one of our predecessor courts stated in *In re Hollywood Brands, Inc.,* 214 F.2d 139, 140, 102 USPQ 294, 295, 41 CCPA 1001 (1954), when reviewing the refusal of a registration sought under Section 2(f), "[t]here is no doubt that Congress intended that the burden of proof [under Section 2(f)] should rest upon the applicant for registration." *See also Roselux Chemical Co. v. Parsons Ammonia Co.,* 299 F.2d 855, 862, 132 USPQ 627, 633–34, 49 CCPA 931 (1962) (burden on applicant to show descriptive word has acquired meaning indicative of origin of goods); 1 J. McCarthy, *Trademarks and Unfair Competition* § 15:11A at 686 (2d ed. 1984) ("[t]he burden of proof of secondary meaning is upon the party trying to establish legal protection for the mark"); McCormick, *Evidence* § 336 at 947 (Cleary 3d ed. 1984) (the party asserting a fact has the obligation to establish that fact). As this court observed while reviewing an opposition proceeding in *Levi Strauss & Co. v. Genesco, Inc.,* 742 F.2d 1401, 1405, 222 USPQ 939, 942 (Fed. Cir.1984), the "one seeking to register [the proposed trademark] bears the burden of showing secondary meaning under Section 2(f)."

However, seizing upon the board's statement that Yamaha had not met its "burden of proof," 231 USPQ at 935, Yamaha nevertheless asserts that the board improperly transferred the "burden" of persuasion from applicant to opposer. We disagree. In our view, as indicated above, the board only placed on Yamaha a "burden" of going forward with evidence as the opposer. In any event, once that burden was assumed by the board in the alternative to have been carried by Yamaha, the final "burden," that of going forward with evidence to overcome the opposer's prima facie case and establish acquired distinctiveness by at least a preponderance of the evidence, was properly placed by the board upon the applicant Hoshino.[9] Thus, in making its alternative holding, the board did exactly what Yamaha asserts it should have: placed the ultimate burden of showing acquired distinctiveness on Hoshino.

Admittedly, we do not find it altogether surprising that some of the language used by the board in its opinion is capable of being misinterpreted. At the outset of its discussion, the board observed that "the burden of proof in an inter partes proceeding rests on the plaintiff party." The board then cited *Clinton Detergent Co. v. Procter & Gamble Co.,* 302 F.2d 745, 747, 133 USPQ 520, 522, 49 CCPA 1146 (1962), for the proposition that the "[o]pposer ... has the burden of proof to establish that applicant does not have the right to register its mark." *Id.* (also citing *Wilson v. Delaunay,* 245 F.2d 877, 880, 114 USPQ 339, 342, 44 CCPA 1019 (1957)). However, the board failed to appreciate that the opposer in *Clinton* was asserting likelihood of confusion with its own previously registered mark and that the opposer in *Wilson* was asserting prior use of the mark, issues unrelated to acquired distinctiveness and carrying distinct burdens in accordance with the rules of evidence.

It is beyond question that an opposer alleging likelihood of confusion under Section 2(d) "has the burden of proof to establish that applicant does not have the right to register its mark." *Clinton,* 302 F.2d at 747, 133 USPQ at 522. In fact, an opposer alleging likelihood of confusion "bears the burden of proof which encompasses not only the ultimate burden of persuasion, but also the obligation of going forward with sufficient proof of the material allegations of the Notice of Opposition, which, if not

9. Thus, it was not the same "burden" that was being shifted by the board, assuming it can be said that there was indeed a shift of "burdens" at all. *Cf. Federal Glass,* 162 USPQ at 283 (where opposer was held to have "made out a prima facie case sufficient to shift the burden of going forward to applicant to show that its ... design can and does, in fact, identify and distinguish its products [i.e., has acquired distinctiveness]"). Much of the potentially confusing aspects of the board's language can be reconciled with the views expressed in this opinion if the opposer's "burden of proof" therein described is viewed as a burden to establish a prima facie case, and not as the ultimate burden of persuasion.

countered, negates [applicant's] right to a registration." *Sanyo,* 691 F.2d at 1022, 215 USPQ at 834. Since 15 U.S.C. § 1052(d) provides that no trademark shall be refused *unless* it is shown that there is a likelihood of confusion with another mark, the requirement that the opposer both establish a prima facie case of likelihood of confusion and carry the ultimate burden of persuasion on that issue is proper in light of Congress's wording of the statute.

However, Section 2(f) applies to registrations for marks which are not inherently distinctive, or which would not otherwise qualify for registration in the face of the provisions of Section 2(e). *See* 37 C.F.R. § 2.41(a). Thus, unlike the first five sections of 15 U.S.C. § 1052 which define the grounds upon which a trademark registration is to be refused, Section 2(f) serves as an exception to a rejection under the provisions of one of the other sections, Section 2(e). *See In re Loew's Theatres, Inc.,* 769 F.2d 764, 766 n. 4, 226 USPQ 865, 867 n. 4 (Fed.Cir.1985). Section 2(f) permits registration of marks that, despite not qualifying for registration in light of Section 2(e), have nevertheless "become distinctive of the applicant's goods in commerce." Thus, "Section 2(f) is not a provision on which registration can be refused," *In re Capital Formation Counselors, Inc.,* 219 USPQ 916, 917 n. 2 (TTAB 1983),[10] but is a provision under which an applicant has a chance to prove that he is entitled to a federal trademark registration which would otherwise be refused.

Thus, seeking registration under Section 2(f) is not unlike an affirmative defense to a showing by the opposer (or a concession by the applicant) that the applicant otherwise is not entitled to a trademark for one of the reasons listed under Section 2(e). Affirmative defenses are to be proved by the party asserting them. *See, e.g., Brunswick Bank & Trust Co. v. United States,* 707 F.2d 1355, 1360 (Fed.Cir.1983). Neither *Clinton, Wilson,* nor any other opposition proceeding not involving Section 2(f) should be viewed as placing the ultimate burden of persuasion on the opposer in oppositions where acquired distinctiveness under Section 2(f) is at issue. In contrast to the opposer's ultimate burden in oppositions involving Sections 2(a)–(e), the ultimate burden when registration is sought under Section 2(f) is properly placed on the applicant.[11] Furthermore, the applicant has the ultimate burden of showing acquired distinctiveness regardless of whether the lack of inherent distinctiveness or the applicability of Section 2(e) was shown by the opposer during the opposition or conceded by the applicant prior to the opposition. To conclude otherwise would give the applicant for a trademark the rebuttable presumption of validity that properly follows only the registration of the mark, not the publication of the proposed mark prior to its registration. *See* 15 U.S.C. § 1057(b) ("[a] certificate of registration of a mark upon the principal register ... shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce").

10. In *Capital Formation,* 219 USPQ at 917 n. 2, in reviewing a refusal by the examining attorney to register a mark under Section 2(f), the board observed that "[t]echnically, the final refusal should have been one in accordance with Section 2(e)(1) with a finding that applicant's Section 2(f) evidence was insufficient to overcome the Section 2(e)(1) statutory prohibition. Section 2(f) is not a provision on which registration can be refused."

11. Here, the board had cited *Sunbeam Corp. v. Battle Creek Equipment Co.,* 216 USPQ 1101 (TTAB 1982), for the proposition that an opposer must prove that the alleged mark has not in fact achieved distinctiveness. 231 USPQ at 931; *see also Flower Industries Inc. v. Interstate*

*Brands Corp.,* 5 USPQ 2d 1580, 1584 (TTAB 1987). In *Sunbeam,* the opposer was held to have shown "by a preponderance of the evidence" that applicant's mark had not become distinctive of its goods in commerce. 216 USPQ at 1104. To be reconcilable with this opinion, *Sunbeam* and *Flower Industries* should be viewed as holding that the prevailing opposer had met more than the actual burden upon it. However, requiring an opposer to always meet that greater burden would be improper. Actually, the ultimate burden of persuasion is only critical in the situation where the evidence is so evenly balanced that no preponderance emerges. In that event, the party having the burden of persuasion necessarily loses.

## IV. *Hoshino's Evidence*

■ The issue of acquired distinctiveness is a question of fact, *In re Loew's Theatres, Inc.*, 769 F.2d 764, 769, 226 USPQ 865, 869 (Fed.Cir.1985) (and cases cited therein), and is reviewed under the clearly erroneous standard. *In re Owens–Corning Fiberglas Corp.*, 774 F.2d 1116, 1125–28, 227 USPQ 417, 422–25 (Fed.Cir. 1985). However, "[t]he statute is silent as to the weight of evidence required for a showing under Section 2(f) 'except for the suggestion that substantially exclusive use for a period of five years immediately preceding filing of an application may be considered prima facie evidence.'" *Id.* at 1125, 227 USPQ at 422 (quoting *In re Hehr Manufacturing Co.*, 279 F.2d 526, 528, 126 USPQ 381, 382–83, 47 CCPA 1116 (1960)).

> As observed by our predecessor court, the "exact kind and amount of evidence necessarily depends on the circumstances of the particular case", and "Congress has chosen to leave the exact degree of proof necessary to qualify a mark for registration to the judgment of the Patent Office and the courts."

774 F.2d at 1125, 227 USPQ at 422 (quoting *Hehr*, 279 F.2d at 528, 126 USPQ at 383); *see also* 1 Gilson, *supra*, § 2.09, at 2–73 ("[i]n general, the greater the degree of descriptiveness the term has, the heavier the burden to prove it has attained secondary meaning"); 1 McCarthy, *supra*, § 15:10, at 683 ("the more descriptive the term, the greater the evidentiary burden to establish secondary meaning").

■ Yamaha argues that Hoshino had the burden of proving acquired distinctiveness under the present circumstances by clear and convincing evidence (citing *In re Meyer & Wenthe, Inc.*, 267 F.2d 945, 122 USPQ 372, 46 CCPA 919 (1959)). However, the standard of proof in an opposition under section 2(f) has always been a preponderance of evidence, although logically that standard becomes more difficult to meet as the mark's descriptiveness increases.[12] Here, concerned with a design rather than a descriptive term, the board concluded that Yamaha's "highly limited evidence" was insufficient "to demonstrate such commonality or ornamental significance that an unusually heavy burden would be needed [by Hoshino] to sustain a Section 2(f) burden of proof." 231 USPQ at 935. Therefore, we review the entire record adduced before the board to determine whether the applicant Hoshino demonstrate acquired distinctiveness by a preponderance of the evidence under the circumstances of the present case. *Cf. Clinton Detergent Co. v. Procter & Gamble Co.*, 302 F.2d 745, 748, 133 USPQ 520, 523, 49 CCPA 1146 (1962) (no general rule to determine precisely where a word acquires such distinctiveness to function as a mark; "[e]ach case must stand on its own record").

In most oppositions to registrations under Section 2(f), prevailing opposers have presented some evidence that the mark has not acquired distinctiveness, such as others' use of the proposed mark or similar marks. *Levi Strauss*, 742 F.2d at 1402, 222 USPQ at 940; *Quaker State Oil Refining Corp. v. Quaker Oil Corp.*, 453 F.2d 1296, 1298–99, 172 USPQ 361, 362–63, 59 CCPA 764 (1972); *Roselux*, 299 F.2d at 861, 132 USPQ at 632–33. Here, Yamaha's evidence consists of testimony and documents indicating that it and at least three other guitar manufacturers utilized guitar heads "like" or "similar to" those used by Hoshino. Additionally, Yamaha continues to press on appeal a variety of evidentiary objections to Hoshino's evidence. Based on that evidence and its evidentiary objections, Yamaha contends that Hoshino's evidence is insufficient to prove the requisite level of acquired distinctiveness. *Cf. Hunter Publishing Co. v. Caulfield Publishing Ltd.*, 1 USPQ2d 1996, 1998–99 (TTAB 1986) (where opposer asserted that applicant's evidence was insufficient to show distinctiveness

---

**12.** The applicant in *Meyer & Wenthe* was seeking to register the mark "Official" for seal presses, which caused the court to observe that "when the word is not only descriptive but ... connotes an authorized activity, much stronger proof is required." 267 F.2d at 949, 122 USPQ at 375.

without offering evidence of use of the mark by others).

## A. Admissibility

Before the board, Yamaha argued (1) that the compiled documentary evidence summarizing sales, advertising expenditures, and advertising placements were inadmissible hearsay because Hoshino did not lay a proper foundation for their admission under Federal Rule of Evidence 803(6); (2) that the deposition testimony of jazz guitarist John Scofield, guitar maker Roger Sadowsky, and Hoshino general manager Ryoichi Miyahara was inadmissible hearsay from witnesses not qualified as experts; (3) that statements from treatises and manuals on guitars that guitar heads serve to identify the makers or origin were inadmissible hearsay and irrelevant; and (4) that third-party registrations of guitar heads and other guitar components were irrelevant. With the exception of its objections to the admission of the statements from treatises and manuals, Yamaha raises the same objections to Hoshino's evidence in this appeal that it made before the board.

■ The board admitted Hoshino's summaries of its sales and advertising data over Yamaha's objection, despite acknowledging a foundation for admission that "was less than optimally comprehensive or explicit," 231 USPQ at 927, finding the summaries to be admissible under Federal Rule of Evidence 803(6) as being compiled from records maintained in the ordinary course of business. In addition to its objections to foundation for the original records, Yamaha asserts that the summaries of those records were not admissible since the original records, or duplicates, were not made available for examination or copying, at a reasonable time and place, as required by Federal Rule of Evidence 1006.[13] *See United States v. Kim*, 595 F.2d 755, 763–64 (D.C.Cir.1979). However, the board subsequently noted that it would have found

Hoshino had established acquired distinctiveness for its guitar heads even without the challenged summaries. 231 USPQ at 933 n. 15. Thus, even assuming that the board erred in admitting the summaries, the error is not prejudicial to Yamaha if the board's conclusion in light of the other evidence, properly admitted, is not clearly erroneous. *Stock Pot Restaurant, Inc. v. Stockpot, Inc.*, 737 F.2d 1576, 1581, 222 USPQ 665, 669 (Fed.Cir.1984).

■ With respect to the testimony of the witnesses offered as experts by Hoshino, the board carefully considered Yamaha's objections, and excluded the opinion testimony of Miyahara because he lacked the qualifications to express expert opinions in the field of guitar making and playing. 231 USPQ at 929 & n. 7. The board had broad discretion to admit the testimony of Scofield and Sadowsky as experts in that field, and we may disturb its decision to do so only if it was manifestly erroneous. *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); 11 J. Moore & H. Bendix, *Moore's Federal Practice* § 702.10[3] (2d ed. 1985). Yamaha has not shown manifest error. Yamaha's arguments that Scofield and Sadowsky had not conducted or cited consumer surveys as to whether consumers recognized Hoshino's guitar heads as indications of source actually help to indicate that the experts' testimony was not the hearsay declarations of others as prohibited by Federal Rule of Evidence 801(c), but the opinions of the witnesses testifying as experts. *See* Fed.R.Evid. 703. Therefore, Yamaha's challenges to their opinions that guitarists would recognize certain guitar brands from the shape of their guitar heads and that the particular heads involved in this case could serve as source-identifying marks, as well as Yamaha's arguments that the experts were biased, go to the weight of the evidence rather than to its admissibility. Indeed, the board only accorded the expert

---

**13.** Unlike the situation in *Squirtco v. Tomy Corp.*, 697 F.2d 1038, 1042 n. 4, 216 USPQ 937, 939 n. 4 (Fed.Cir.1983), Yamaha's objections to the foundation for the summaries were not waived.

testimony "modest weight." 231 USPQ at 928 n. 5.

■ Yamaha does not challenge on appeal the introduction of the excerpts from the treatises and manuals that guitar heads are capable of serving as identifications of source. However, it does challenge Hoshino's evidence that the guitar heads of other manufacturers had secondary meaning because the issue in this case is whether Hoshino's guitar heads had acquired distinctiveness. However, the evidence of acquired distinctiveness in the guitar heads of others was admitted by the board for the purpose of rebutting Yamaha's other ground for its opposition, that the guitar heads were "primarily ornamental" and incapable of functioning as trademarks. The board properly considered the proffered evidence as relevant to rebut that allegation.

### B. Sufficiency

■ Yamaha then argues, in light of its evidentiary objections, that Hoshino's remaining admissible evidence did not meet the minimum standard necessary for registration on the basis of secondary meaning because the guitar head configuration was always presented in conjunction with the applicant's word mark "IBANEZ," because there was no special effort in the advertising to distinguish the guitar head as having separate source-identifying significance, and because there was no consumer survey data or affidavits indicating consumer perceptions. However, absence of consumer surveys need not preclude a finding of acquired distinctiveness. *See Roux Laboratories, Inc. v. Clairol Inc.*, 427 F.2d 823, 166 USPQ 34, 57 CCPA 1173 (1970). To prove distinctiveness under 15 U.S.C. § 1052(f), applicants may submit any "appropriate evidence tending to show that the mark distinguishes [applicant's] goods." 37 C.F.R. § 2.41(a).

The board had before it Hoshino's evidence showing 8 years of continuous and exclusive use of the specific guitar head designs sought to be registered, evidence of substantial sales and promotion of the guitars whose head shape it sought to register, and evidence that guitar head designs identify their source. The board also viewed as credible the applicant's assertion that the shape of the guitar peg heads could serve as source identifiers in situations where the brand names on the heads might not be visible. 231 USPQ at 934. The board further found that the applicant's advertising incorporated the peg head design in a prominent or visible position, and not always with the brand name discernible in the advertising copy. Although the peg head designs were not the sole or primary focus of the advertising, the board concluded that the constant promotional display of the product pictures did contribute to the recognition of the peg head designs as source indicators. *Id.* The board also considered Yamaha's evidence that four other guitar head designs of other makers were "like" those that Hoshino sought to register. Thus, while the record is lacking in direct evidence of consumer testimony or perceptions as to whether the specific guitar heads employed by Hoshino function as significant indications of source, the record is also without any evidence of real substance to the contrary. Under the circumstances, we cannot deem clearly erroneous the board's finding that Hoshino's "peg head designs have acquired the requisite secondary meaning for registration." 231 USPQ at 933–34.

### CONCLUSION

We hold that in an opposition under Section 2(f) the ultimate burden of persuasion is on the applicant to prove acquired distinctiveness in the mark sought to be registered. While the board was not incorrect in describing the opposer's burden in an opposition based on Section 2(f) to present a prima facie case of no acquired distinctiveness by rebutting the applicant's prima facie case of acquired distinctiveness made to the examiner, for the reasons stated in Part II of this opinion, we find that the board unnecessarily addressed whether the

prima facie case of no acquired distinctiveness had been established by Yamaha. Judicial economy would have been better served if the board had limited its analysis to whether Hoshino demonstrated acquired distinctiveness in its proposed marks by a preponderance of the evidence in the entire record. Finally, under the circumstances present here, we conclude that the board was not clearly erroneous in determining that Hoshino's evidence was sufficient to meet its burden under Section 2(f) to demonstrate acquired distinctiveness to support registration of its guitar peg heads as trademarks.

AFFIRMED.