3/8/02

**THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.**

Paper No. 18
GDH/gdh

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Mine Safety Appliances Company
_____

Serial No. 75/501,608
_____

Thomas A. Kain of Colucci & Umans for Mine Safety Appliances Company.

LaVerne T. Thompson, Trademark Examining Attorney, Law Office 116 (Meryl Hershkowitz, Managing Attorney).
_____

Before Seeherman, Hohein and Drost, Administrative Trademark Judges.

Opinion by Hohein, Administrative Trademark Judge:

Mine Safety Appliances Company has filed an application to register the term "WORKMASK" as a trademark for goods identified as "safety equipment, namely, self-contained breathing apparatus".[1]  As originally filed, the application alleges that such term "has become distinctive as applied to

---

[1] Ser. No. 75/501,608, filed on June 12, 1998, which alleges a date of first use anywhere and in commerce of May 12, 1993.

Applicant's goods by reason of substantially exclusive and continuous use thereof as a trademark by Applicant in interstate commerce for the five (5) [years] before the date on which this claim of distinctiveness is made."

Registration has been finally refused under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), on the basis that, when used in connection with applicant's goods, the term "WORKMASK" is merely descriptive of them and that applicant's allegation of five years of substantially exclusive and continuous use thereof, as supplemented by the submission of additional evidence, is insufficient to establish acquired distinctiveness under Section 2(f) of the Trademark Act, 15 U.S.C. §1052(f).[2]

Applicant has appealed. Briefs have been filed, but an oral hearing was not requested. Because we find that on this record applicant has presented a sufficient showing of acquired distinctiveness, we reverse the refusal to register.

Turning first to the issue of mere descriptiveness, we observe as a preliminary matter that applicant, by setting

---

[2] Due to a lack of acquired distinctiveness, the term "WORKMASK" would still be considered merely descriptive of applicant's goods and, in view thereof, would remain unregistrable under Section 2(e)(1). See, e.g., Yamaha Int'l Corp. v. Hoshino Gakki Co. Ltd., 840 F.2d 1572, 6 USPQ2d 1001, 1007 (Fed. Cir. 1988), citing In re Capital Formation Counselors, Inc., 219 USPQ 916, 917 n. 2 (TTAB 1983).

forth a claim of acquired distinctiveness in the application as initially filed, has in effect conceded that the term which it seeks to register would otherwise be merely descriptive of its goods. Specifically, as correctly noted by the Examining Attorney in her brief, such a claim is tantamount to an admission that the term "WORKMASK" is not inherently distinctive when used in connection with self-contained breathing apparatus and thus, in light of the prohibition in Section 2(e)(1) against registration of merely descriptive marks, is unregistrable on the Principal Register absent a showing of acquired distinctiveness pursuant to Section 2(f).[3] See, e.g., Yamaha International Corp. v. Hoshino Gakki Co. Ltd., supra at 1005; In re Cabot Corp., 15 USPQ2d 1224, 1229 (TTAB 1990); In re Professional Learning Centers, Inc., supra at 71; and TMEP Section 1212.02(b).

However, aside from the above admission by applicant, we agree with the Examining Attorney that the term

---

[3] This situation is to be distinguished from that where an applicant, in response to a refusal on the ground of mere descriptiveness, argues against the merits of the Examining Attorney's position and, in the alternative, adds a claim that the matter sought to be registered has acquired distinctiveness pursuant to Section 2(f). In such instance, it is permissible to argue that the matter sought to be registered is not merely descriptive, yet advance the alternative claim that such matter has acquired distinctiveness, inasmuch as the latter does not constitute a concession that the matter sought to be registered is not inherently distinctive. See, e.g., In re E S Robbins Corp., 30 USPQ2d 1540, 1542 (TTAB 1992); In re Professional Learning Centers, Inc., 230 USPQ 70, 71 n. 2 (TTAB 1986); and TMEP Section 1212.02(c).

"WORKMASK" plainly is merely descriptive of "self-contained breathing apparatus".[4]  Applicant, while further conceding in its initial brief that "the words 'work' & 'mask' have some relation" to its goods, argues that the term "WORKMASK" is suggestive because, in the abstract, "it just doesn't tell ... anything about the nature or characteristics of the product or what it is certified for -- i.e., its purpose."  Such purpose, applicant insists, "is to prevent people from being injured by industrial, agricultural and environmental hazards."  Applicant urges that "[t]he term 'WORKMASK' does not convey this knowledge with any reasonable accuracy or in any precise way," other than to suggest generally that "the goods are apparatus that may be used in the workplace."  In addition,

---

[4] It is well settled, in this regard, that a term is considered to be merely descriptive of goods or services, within the meaning of Section 2(e)(1) of the Trademark Act, if it immediately describes an ingredient, quality, characteristic or feature thereof or if it directly conveys information regarding the nature, function, purpose or use of the goods or services.  See In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978).  It is not necessary that a term describe all of the properties or functions of the goods or services in order for it to be considered to be merely descriptive thereof; rather, it is sufficient if the term describes a significant attribute or idea about them.  Moreover, whether a term is merely descriptive is determined not in the abstract but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with those goods or services and the possible significance that the term would have to the average purchaser of the goods or services because of the manner of its use.  See In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979).  Consequently, "[w]hether consumers could guess what the product [or service] is from consideration of the mark alone is not the test."  In re American Greetings Corp., 226 USPQ 365, 366 (TTAB 1985).

4

applicant contends that on this record "there is no showing that ... competitors would have a need to use the coined term WORKMASK (i.e., non-dictionary word) on their own brands of self[-]contained breathing apparatus" and that "there is no evidence that anyone but applicant has ever used WORKMASK in any way, [there being] no dictionary entries, no LEXIS/NEXIS printouts, no competitor's product literature, etc." The absence thereof, applicant asserts, "must be regarded as strong evidence that the subject mark is not merely descriptive."

The Examining Attorney, on the other hand, relies upon the dictionary definitions of record from <u>The American Heritage Dictionary of the English Language</u> (3rd ed. 1992) to support her conclusion that, while not generic, the term "WORKMASK" merely describes "a characteristic, function, feature, purpose or use of the applicant's goods." Such dictionary, in pertinent part, defines "work" as a noun meaning "**2. a.** A job; employment: *looking for work.* **b.** A trade, profession, or other means of livelihood" and as an adjective meaning "[o]f, relating to, designed for, or engaged in work." The same dictionary lists "mask" in relevant part as signifying "**2. a.** A protective covering for the face or

head.  **b.** "A gas mask.  **c.** A covering for the nose and mouth that is used for inhaling oxygen ...."

The Examining Attorney also relies in support of her position upon applicant's advertising materials, which she maintains demonstrate that its goods include air masks and "clearly show [that] its safety equipment is marketed for use while at work, [that is,] on the job."  In particular, she observes that applicant's Exhibit 1 refers to its various "WORKMASK" products as air masks, with such brochure stating on the front thereof:  "Now, More WorkMask Air Masks for More Versatility!" and that applicant's Exhibit 3 describes the applications for its "WorkMask II Self-Contained Breathing Apparatus" as encompassing "industrial facilities agricultural grain fumigation, water and wastewater treatment plants, HazMat work and HVAC (heating, ventilation and air conditioning) jobs, including work near industrial chillers ...."  She additionally contends that applicant's air masks allow the users thereof to breathe "in situations where the air may be dangerous, such as in certain work environments as depicted in pictures throughout the applicant's advertising materials" and that nothing in its literature shows that its goods "are meant for general household use."

In view of the above, the Examining Attorney asserts that by joining the words "work" and "mask" to form the term "WORKMASK":

> The applicant merely combines two terms that are highly descriptive when used with safety equipment, namely, self-contained breathing apparatus. No ambiguity exists here. The ordinary meaning of the words is understood by the relevant purchasing public to refer to masks used in a line of work where breathing healthy air is an issue.

The Examining Attorney correctly points out, in addition, that:

> The fact that a term is not found in the dictionary is not controlling on the question of registrability. *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987); *In re Orleans Wines, Ltd.*, 196 USPQ 516 (TTAB 1977). For that matter, the fact that an applicant may be the first and only user of a ... designation does not justify registration if the term is merely descriptive. *In re National Shooting Sports Foundation, Inc.*, 219 USPQ 1018 (TTAB 1983).

The dictionary definitions and applicant's advertising materials are sufficient to establish that, as noted previously, the term "WORKMASK" is merely descriptive of applicant's "safety equipment, namely, self-contained breathing apparatus." Nothing in such term is incongruous, indefinite or ambiguous when considered in relation to applicant's goods and, consequently, no imagination,

7

cogitation or gathering of further information would be necessary in order for customers for applicant's self-contained breathing apparatus to perceive precisely the merely descriptive significance of the term "WORKMASK." Such term immediately describes, without conjecture or speculation, that a significant feature, purpose or use of applicant's products is that of an air mask for work, including any mask worn where the air in the work environment is hazardous or otherwise unsafe to breathe. The words "work" and "mask," when combined to form the term "WORKMASK," have a merely descriptive connotation identical to the meaning which ordinary usage would ascribe to those words in combination and in relation to applicant's goods.[5]

---

[5] Both applicant and the Examining Attorney, we further note, have devoted a substantial portion of their briefs to a discussion of the numerous third-party registrations which each has made of record. By and large, the third-party registrations, which are for marks containing either the word "work" or the word "mask" as a formative element, are not dispositive of the issue of mere descriptiveness herein. This is because on the whole they simply show that, consistent with the statutory scheme and the practice of the United States Patent and Trademark Office, where a mark which includes the word "work" or "mask" is unitary or suggestive, the registration thereof respectively issued on the Principal Register without either a disclaimer or resort to the provisions of Section 2(f), while in instances where a composite mark which includes the word "work" is merely descriptive in part or in its entirety, the registration thereof respectively contains a disclaimer or issued either on the Principal Register pursuant to the provisions of Section 2(f) or on the Supplemental Register under Section 23 of the Trademark Act, 15 U.S.C. §1073. No weight may therefore be given to applicant's contentions in its initial brief (and reiterated in its reply brief) that "applicant has introduced even more registrations showing the inherent distinctiveness of WORK" and that "the registrations which it submitted rebut, or at least neutralize, the argument of the

Turning, therefore, to the remaining issue in this appeal, it is settled that applicant has the burden of proof with respect to establishing a prima facie case that the term "WORKMASK" has acquired distinctiveness. See Yamaha International Corp. v. Hoshino Gakki Co. Ltd., supra at 1006. The amount and character of evidence needed to demonstrate that a term has acquired distinctiveness, however, necessarily varies, depending upon the degree of descriptiveness involved, and becomes progressively greater as the descriptiveness of the term increases.[6] Id. at 1008; and In re Leatherman Tool

---

Examining Attorney that 'WORK' is descriptive." In any event, as the Examining Attorney properly points out in her brief, "[a] mark which is merely descriptive is not registrable merely because other similar marks appear on the register. *In re Scholastic Testing Service, Inc.*, 196 USPQ 517 (TTAB 1977)." Each case, instead, must be determined on its own merits. See, e.g., In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ["Even if some prior registrations had some characteristics similar to [applicant's] application, the ... allowance of such prior registrations does not bind the Board or this court."]; In re Broyhill Furniture Industries Inc., 60 USPQ2d 1511, 1514 (TTAB 2001); and In re Pennzoil Products Co., 20 USQP2d 1753, 1758 (TTAB 1991).

[6] In this regard, Trademark Rule 2.41(a) provides that an applicant may demonstrate that its mark has acquired distinctiveness by submitting "affidavits, or declarations in accordance with §2.20, depositions, or other evidence showing duration, extent and nature of use in commerce and advertising expenditures in connection therewith (identifying types of media and attaching typical advertisements), and affidavits, or declarations in accordance with §2.20, letters or statements from the trade or public, or both, or other appropriate evidence tending to show that the mark distinguishes such goods." In the alternative, Trademark Rule 2.41(b) provides that "[i]n appropriate cases, ownership of one or more prior registrations on the Principal Register ... of the same mark may be accepted as prima facie evidence of distinctiveness" and that an acquired distinctiveness claim may also be based on a verified statement that the mark has been in "substantially exclusive and continuous use in

Group Inc., 32 USPQ2d 1443, 1451 (TTAB 1994). Here, contrary to applicant's contention, the term "WORKMASK," as asserted by the Examining Attorney, is by its very nature highly descriptive of applicant's self-contained breathing apparatus. Consequently, as indicated earlier, applicant has supplemented its claim of acquired distinctiveness, which originally was based upon a verified allegation of five years of substantially exclusive and continuous use of the term "WORKMASK" as a mark for its goods, by the submission of additional evidence. Such evidence consists of the declaration, with exhibits, of Donald H. Cuozzo, who is the "Vice President, Secretary and General Counsel" of applicant ("MSA").

Mr. Cuozzo avers, with respect to his "belief that the trademark 'WORKMASK' has become distinctive of the 'self-contained breathing apparatus' provided by MSA," that the nine copies of various "data sheets and bulletins" used by applicant in connection with its "WORKMASK" self-contained

---

commerce ... by applicant for the five years before the date on which the claim of distinctiveness is made". Trademark Rule 2.41(b) additionally states that while either of such showings "may, in appropriate cases, be accepted as prima facie evidence of distinctiveness," "[i]n each of these situations, however, further evidence may be required." As set forth in TMEP Section 1212.05(a), it is the practice of the United States Patent and Trademark Office, based upon the cases cited therein, that: "If the mark is highly descriptive or misdescriptive of the goods or services named in the application, the statement of five years' use alone will be deemed insufficient to establish acquired distinctiveness."

breathing apparatus ("SCBA") "are representative of the product literature MSA has used to market its 'WORKMASK' SCBA over the past six years"; that applicant "has printed and distributed to customers tens of thousands of these data sheets and bulletins"; that, with respect to the seven "copies of portions of various safety equipment catalogs which show the 'WORKMASK' SCBA," and the complete copy of its "1996 Safety Equipment Catalog" with its several "[r]eferences to the 'WORKMASK' SCBA," applicant "has printed and distributed hundreds of thousands of these catalogs over the past 5 years"; that a copy of a 1995 "Bulletin" is "an example of the type of material MSA has used in connection with displaying the 'WORKMASK' SCBA at several trade shows during each of the past six years"; and that applicant's "marketing efforts over the past six years have generated sales of over ten thousand (10,000) WORKMASK SCBA's resulting in over ten million dollars ($10,000,000) of revenue."

Applicant argues that its "long use, its sales and revenue figures and its advertising and promotional materials showing trademark use establish that the WORKMASK mark is entitled to registration" pursuant to Section 2(f). Applicant, in particular, insists that its advertising and promotional materials demonstrate "prominent use of WORKMASK in conjunction with the '™' symbol," thereby "creating the

11

commercial impression that WORKMASK is applicant's trademark and that this is what it would mean to a purchaser." Applicant also emphasizes that, "attributable in part to the successful advertising and promotion of the subject mark, applicant has had significant sales (10,000 units) and revenue ($10,000,000) under the WORKMASK mark" during a six-year period commencing with the year 1994. Furthermore, applicant contends that "[i]n this case ... there is no evidence showing WORKMASK used descriptively - no dictionary references, no documentary evidence, e.g., no LEXIS/NEXIS printouts - nothing." Given the absence in this record of any "excerpts from the Thomas Register, The Yellow Pages, or any other source showing anyone using WORKMASK on or in connection with any goods or services," applicant concludes that such term cannot be considered to be highly descriptive and, thus, its evidentiary showing suffices to establish a prima facie case of acquired distinctiveness.

The Examining Attorney, on the other hand, maintains that applicant's evidence of acquired distinctiveness is inadequate. Specifically, in her brief, the Examining Attorney criticizes applicant's showing as insufficient because:[7]

---

[7] While we recognize that the present Examining Attorney is not the one who issued the final refusal in this case, it would have been the better practice if the criticisms raised in her appeal brief had been

12

The record is glaringly deficient of consumer perception. An evidentiary showing of secondary meaning, adequate to show that a mark has acquired distinctiveness indicating the origin of the goods, includes evidence of the trademark owner's method of using the mark, supplemented by evidence of the effectiveness of such use to cause the purchasing public to identify the mark with the source of the product. Proof of distinctiveness affidavits, or declarations ..., or letters or statements from the trade or public, or both, or other appropriate evidence tending to show that the mark distinguishes such goods [is lacking].

The applicant's evidence also fails to indicate the applicant's place in the scope of the industry, much less the competitive scope of the industry. There is no evidence in the record which establishes if the applicant's sales figures of 10,000 units places applicant at the top of its field or the bottom, [and] moreover the applicant's materials indicate the applicant is a global company with worldwide operations so presumably the sales are worldwide. .... There is no evidence for the period of time this figure covers nor is a time frame indicated for its $10,000,000 in revenue. There is no evidence if these figures are based on 1 year of sales and revenue worldwide or the past 7 years. There is also no evidence in the record for the price of such devices .... But most significantly there is no evidence in the record that the applicant's sales or advertising has [had] any impact on the purchasing public [such] that its mark is perceived as a source indicator for the [goods marketed by] applicant. At most

---

mentioned in her denial of applicant's request for reconsideration of the final refusal, thereby giving applicant a fair chance to address such concerns (e.g., by requesting a remand for consideration of a supplemental declaration) prior to filing its initial brief.

> the sales and revenue figures show the applicant may have devised a successful marketing campaign.  ....
>
>           ....
>
>           In the applicant's case[,] evidence of distinctiveness would have to be great. The applicant's mark can have no meaning other than the obvious for its goods, [which is] that the safety equipment includes an air or breathing mask used at or for work.  The question to be resolved here is ... whether acquired distinctiveness of the mark in relation to the goods ... has in fact been established in the minds of the purchasing public. ....

We concur with applicant, however, that it has satisfied its burden of establishing a prima facie case that the term "WORKMASK" has acquired distinctiveness and that such case has not been rebutted by the Examining Attorney. Although, to be sure, applicant's showing would be more compelling if the record indicated that it was among the leaders in its field of safety equipment, the absence of information with respect thereto is not fatal to applicant's establishing a prima facie case of acquired distinctiveness. Similarly, while it is the levels of sales and advertising expenditures in commerce in or with the United States which are relevant to demonstrating secondary meaning for purposes of obtaining registration, there is nothing in the record to indicate that a significant portion, if not most or even all,

of applicant's sales figures and promotional outlays were made anywhere other than in commerce in or with the United States.

Consequently, as applicant persuasively points out in its reply brief (footnotes omitted):

> Ten Million Dollars ($10,000,000) in sales of one product in six (6) years is not chicken feed. While by itself it may not necessarily, <u>conclusively</u> prove acquired distinctiveness, it sure goes a long way towards making a <u>prima</u> <u>facie</u> showing. And coupled with the distribution to a comparatively small target audience of hundreds of thousands of catalogs and tens of thousands of datasheets and bulletins, all bearing WORKMASK as a trademark, there should be no doubt that Applicant's mark has developed, <u>prima</u> <u>facie</u>, acquired distinctiveness.
>
> The strength of this showing seems to have struck home because the Examining Attorney's brief takes a couple of feeble shots to diminish its significance. First, there is the mistaken statement that Applicant did not provide information regarding the unit price of goods sold under the WORKMASK mark. However, Exhibits 4 through 8 to the Applicant's 2(f) Declaration show that the base price of the WORKMASK breathing apparatus in 1994 was $692.65, in 1996 [it] was $693.20, in 1997 [it] was $726.25, in 1998 [it] was $731.06 and in 1999 [it] was $775.44 ....
>
> ....
>
> The purchasers of Applicant's goods are professional buyers, not general consumers, not do-it-yourselfers. ....
>
> These professional buyers have been exposed to the tens of thousands of Applicant's WORKMASK datasheets and bulletins ... and the hundreds of thousands

15

> of WORKMASK catalogs .... This
> representative sample of Applicant's
> datasheets, bulletins and catalogs ... show
> the ™ symbol prominently used with the
> WORKMASK mark, and in none of these
> datasheets, bulletins or catalogs is
> WORKMASK used descriptively.
>
> It should be self-evident that a
> target audience made up of professional
> buyers is far smaller than consumers
> generally. Therefore, it follows that the
> tens of thousands of Applicant's datasheets
> and bulletins and the hundreds of thousands
> of Applicant's catalogs have had a much
> greater impact on this smaller audience
> than they would have had on an audience
> made up of consumers generally. ....

In view thereof, we disagree with the Examining

Attorney's contention that "[t]he record is glaringly

deficient of [evidence of] consumer perception" of the term

"WORKMASK" as used as a mark in connection with applicant's

self-contained breathing apparatus and that more evidence,

such as letters, affidavits, declarations or other appropriate

evidence from members of the trade and/or purchasing public,

is necessary. While, among other things, it is well settled

that use of the symbol "™" in connection with otherwise

unregistrable matter does not make such matter a trademark,[8]

the use thereof by applicant in connection with its

---

[8] See, e.g., In re Leatherman Tool Group, Inc., supra at 1450; In re Manco Inc., 24 USPQ2d 1938, 1942 n. 11 (TTAB 1992); In re Pennzoil Products Co., supra at 1760 n. 15; In re General Foods Corp., 177 USPQ 403, 404 n. 1 (TTAB 1973); and In re Nosler Bullets, Inc., 169 USPQ 62, 64 (TTAB 1971).

advertising and promotional materials for its "WORKMASK" self-contained breathing apparatus is evidence of applicant's attempts and intent to educate the trade and purchasing public that it regards the term "WORKMASK" as its trademark for such goods. Moreover, while mere intent that a term identify and distinguish the source of a product, and hence serve as a trademark therefor, is alone insufficient,[9] the record herein demonstrates that applicant, for over six years, has consistently utilized the term "WORKMASK," on its specimens of use and in its advertising and promotional materials and activities, in a manner calculated to project a single source or origin for its goods to customers and members of the trade therefor and has not misused such term descriptively.

In light of the length and manner of such use, including sales of over 10,000 units representing revenue of $10,000,000, the distribution of tens of thousands of data sheets and bulletins, and the circulation of hundreds of thousands of catalogs, all of which involve what clearly is a relatively small audience of consumers, we conclude that, given the level of sophistication and discrimination inherent in buying applicant's safety equipment, purchasers of and those in the market for self-contained breathing apparatus

---

[9] See, e.g. In re Remington Products, Inc., 3 USPQ2d 1714, 1715 (TTAB 1987).

17

have come to regard or perceive the term "WORKMASK" as identifying and distinguishing a source for such goods. This is especially so in view of the absence, in this record, of any evidence that the term "WORKMASK" has ever been used (either descriptively or as a mark) by third parties or been mentioned (either generically or otherwise descriptively) in the Thomas Register or any articles in trade journals or other periodicals referenced in the "LEXIS/NEXIS" database. We accordingly find that on this record applicant has presented a sufficient showing of acquired distinctiveness and thus that the term "WORKMASK" is registrable pursuant to the provisions of Section 2(f) of the statute.

**Decision:** The refusal to register is reversed.