THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:  August 17, 2007
PTH

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re MGA Entertainment, Inc.

————

Serial No. 76603323

————

Joel D. Voelzke, Law Office of Joel D. Voelzke for In re MGA Entertainment, Inc.

Ellen F. Burns, Trademark Examining Attorney, Law Office 116 (Michael W. Baird, Managing Attorney).

————

Before Hairston, Kuhlke and Cataldo, Administrative Trademark Judges.

Opinion by Hairston, Administrative Trademark Judge:

MGA Entertainment, Inc. seeks registration on the

Principal Register of the box design shown below,



Ser No. 76603323

with a claim of acquired distinctiveness under Section 2(f)

of the Trademark Act, for goods identified as:

> trapezoidal cardboard boxes for toys, games and
> playthings, namely, dolls, doll clothing, doll
> accessories, playsets, children's play cosmetics,
> plush toys, toy action figures and accessories
> therefore, action figure play environments,
> action skill games, toy vehicles and playsets,
> toy scooters, board games, card games; and
> athletic protective pads, namely, arm pads, knee
> pads, elbow pads and wrist pads for cycling,
> skating, snowboarding and skateboarding in
> International Class 16.

The design is described as "[t]he form of a trapezoidal

cardboard box."

The trademark examining attorney has finally refused

registration under Sections 1, 2, and 45 of the Trademark

Act on the grounds that (1) the identified goods are not

goods in trade of applicant; and (2) the box design, as a

product design, is not inherently distinctive and applicant

has not established that the box design has acquired

distinctiveness as a trademark.[1]

Applicant has appealed.  Both applicant and the

examining attorney have filed briefs.

---

[1] We note that during the prosecution of the application,
applicant amended the application to add goods in International
Class 28.  The examining attorney made final a requirement that
applicant delete from the application the Class 28 goods.
Applicant did not appeal this requirement, and thus we consider
the Class 28 goods to be deleted from the application.

Before turning to the merits of the appeal, we must discuss an evidentiary matter. Applicant, for the first time with its appeal brief, submitted copies of three third-party registrations in support of its position that the box design is registrable. The examining attorney, in her appeal brief, has objected to this evidence as untimely. Trademark Rule 2.142(d) provides that the record in an application should be complete prior to the filing of an appeal. Additional evidence filed after appeal normally will be given no consideration. TBMP §1207.01 (2d ed. rev. 2004). In view of the foregoing, the examining attorney's objection is sustained, and the third-party registrations submitted with applicant's appeal brief have not been considered in reaching our determination. We hasten to add that the third-party registrations, even if considered, would not compel a different result in this case. In re Nett Designs, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001)["Even if prior registrations had some characteristics similar to [applicant's] application, the PTO's allowance of such prior registrations does not bind the Board or this court."].

We now turn to the refusal to register on the ground that the "trapezoidal cardboard boxes for toys, games and playthings, namely, dolls, doll clothing, doll accessories,

3

playsets, children's play cosmetics, plush toys, toy action figures and accessories therefor, action figure play environments, action skill games, toy vehicles and playsets, toy scooters, board games, card games; and athletic protective pads, namely, arm pads, knee pads, elbow pads and wrist pads for cycling, skating, snowboarding and skateboarding" are not goods in trade. The examining attorney argues that such goods "are incidental to Applicant's business of selling toys and do not have intended additional utility to the consumer as boxes apart from conveying the goods at point of sale." (Brief at 5). The examining attorney maintains that there is no evidence that applicant communicates to purchasers of its puzzles and toy laptop computers, in particular, that the boxes therefor have a use beyond holding the goods at point of sale.[2] Thus, the examining attorney argues that purchasers would have no reason to view these boxes as having additional functions.

---

[2] We note that applicant's identification of goods does not specifically enumerate trapezoidal cardboard boxes for "puzzles" or "toy laptop computers." However, the examining attorney and applicant have argued this case as if such goods are included in the identification. Thus, we have considered the arguments of the examining attorney and applicant in this regard.

It is applicant's position that the identified trapezoidal cardboard boxes for toys, games and playthings are goods in trade. Applicant maintains that its puzzle boxes and toy laptop computer boxes, in particular, have use beyond simply holding the goods at point of sale. With respect to the puzzle boxes, applicant argues that "[t]he cardboard box in which the puzzle is packaged unquestionably serves the ongoing utilitarian purpose of a storage container in which a consumer keeps the puzzle pieces when not playing with the puzzle." (Brief at 14). With respect to the toy laptop computer boxes, applicant's senior paralegal, Bryan Armstrong, states in his declaration:

> The cardboard box that the "laptop" play unit comes in has a plastic handle and a recessed and contoured portion for receiving the laptop. The case functions as an ongoing carrying case for the laptop, like a laptop carrying case for a real laptop computer, so that the child can carry her "laptop" in a case just like mommy and daddy carry their real laptop computers to work in a carrying case. The case is therefore [part] of the child's ongoing play environment.

Applicant has submitted pictures of its puzzle box and toy laptop computer box.

The Board has held that collateral products which serve the purpose of promoting a party's primary goods and which have more than a mere incidental function in relation

to the primary goods may constitute goods in trade.  In re Snap-On Tools Corp., 159 USPQ 254 (TTAB 1968) [ball point pens which are used to promote applicant's tools, but which possess utilitarian function and purpose, and have been sold to applicant's franchised dealers and transported in commerce under mark, constitute goods in trade]; and In re United Merchants & Manufacturers, Inc., 154 USPQ 625 (TTAB 1967) [calendar which is used as advertising device to promote applicant's plastic film, but which possesses, in and of itself, a utilitarian function and purpose, and has been regularly distributed in commerce for several years, constitutes goods in trade].

On the other hand, in Ex parte Bank of America National Trust and Savings Association, 118 USPQ 165 (Comm'r Pats. 1958), it was held that a mark was not registrable for bank passbooks, checks and other printed forms, where such materials were used only as necessary tools in the performance of banking services, and the applicant was not engaged in printing or selling forms as commodities in trade.  Further, in In re Douglas Aircraft Co., Inc., 123 USPQ 272 (TTAB 1959), the Board held that pamphlets, booklets, brochures, bulletins, and letterheads which serve only to advertise, explain and publicize the goods in which an applicant deals do not constitute goods

of such applicant.  In Paramount Pictures Corp. v. White, 31 USPQ2d 1768 (TTAB 1994), the Board found that an applicant's purported game that was not clearly labeled as a game and consisted merely of three photocopied pages, stapled together without any packaging, served only to promote applicant's band and other products, and was not a bona fide game but rather an advertising flier for applicant's band.  The Board also noted that there was no real substance or entertainment value to the purported game, that the flier/game had been distributed primarily as a give-away, and the record showed only one advertisement which made reference to a game.

We note that there is no evidence that applicant is a manufacturer of boxes or that applicant is engaged in selling boxes as commodities in trade.  With respect to the puzzle boxes, in particular, we are not persuaded by applicant's argument that because the puzzle boxes may be used to store the puzzle pieces when not being used, such boxes have additional utility and thus constitute goods in trade.  It is obvious that because of the loose nature of puzzle pieces, they must be held within some type of point of sale container.  It only makes sense that consumers would store the puzzles pieces in the original container when the puzzles pieces are not being used.  Any number of

7

products may be stored by consumers in their original boxes or packaging when not being used (e.g., shoes may be stored in their original cardboard boxes, coffee beans may be stored in their original bags, and DVDs may be stored in their original plastic boxes). However, the mere fact that original boxes or packaging may be used to store products does not infuse such boxes or packaging with additional utility such that they constitute goods in trade. Because many products are stored in the containers in which they are sold, consumers are likely to regard the puzzle boxes as nothing more than point of sale containers, as opposed to separate goods in trade.

Insofar as the toy laptop computer boxes are concerned, there is no indication that such boxes are labeled as carrying cases for the toy laptop computers. Moreover, there is no evidence that applicant advertises or promotes the toy laptop computer boxes as carrying cases for the toy laptop computers. In addition, we note that there is no evidence that children actually use the toy laptop computer boxes in the manner argued by applicant, that is, as carrying cases and as part of the ongoing play environment. We hasten to add that, even if there were evidence that children actually used the boxes in this manner, we would not necessarily be persuaded by this

8

evidence that the boxes have additional utility and thus constitute goods in trade. It is common knowledge that packaging materials may be used as toys by children and thus many such materials, such as plastic bags, have warnings that they are not toys to be used by children. In short, we are not convinced on this record that consumers recognize the toy laptop computer boxes as carrying cases and part of the ongoing play environment. Rather, we believe consumers would view such boxes as nothing more than point of sale containers for applicant's toy laptop computers. In view of the foregoing, we are not persuaded that the toy laptop computer boxes have additional utility such that they constitute goods in trade.

In sum, the goods in this case, trapezoidal boxes for toys, games and playthings, are unlike the ball point pens and calendars in Snap-On Tools and United Merchants & Manufacturers, Inc., respectively. We agree with the examining attorney that such goods are incidental to applicant's primary goods, namely, toys, games and playthings, and are not goods in trade of applicant. Accordingly, the refusal on the ground that the identified goods do not constitute goods in trade is affirmed.

While we find that no trademark rights for such goods have been created, in order to render a complete decision

9

herein, we will consider the refusal that the box design is not inherently distinctive and the Section 2(f) evidence applicant has presented is insufficient to establish acquired distinctiveness. For this portion of our discussion we will assume, arguendo, that the identified trapezoidal cardboard boxes for toys, games and playthings are, in fact, goods in trade.

At the outset, we note that there is no issue that the box design is not distinctive, for two reasons. First, while mere trade dress in the nature of product packaging can be inherently distinctive, trade dress in the nature of a product configuration cannot be, and because applicant claims the box is a good in trade, i.e., a product, rather than mere packaging, its design is registrable, if at all, only on a showing of acquired distinctiveness. See Wal-Mart Stores, Inc. v. Samara Brothers, Inc., 529 U.S. 205, 54 USPQ2d 1065 (2000). Second, by seeking registration under Section 2(f), applicant has conceded lack of inherent distinctiveness and must prove acquired distinctiveness.

The burden of proving a prima facie case of acquired distinctiveness in an ex parte proceeding rests with applicant. Yamaha Int'l Corp. v. Hoshino Gakki Co., Ltd., 840 F.2d 1572, 6 USPQ2d 1001 (Fed. Cir. 1988). To establish acquired distinctiveness, applicant must show

that the primary significance of the product configuration in the minds of consumers is not the product but the producer. Acquired distinctiveness may be shown by direct and/or circumstantial evidence. Direct evidence includes actual testimony, declarations or surveys of consumers as to their state of mind. Circumstantial evidence, on the other hand, is evidence from which consumer association might be inferred, such as years of use, extensive amount of sales and advertising, and any similar evidence showing wide exposure of the mark to consumers. See 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, Sections 15:30, 15:61, 15:66 and 15:70 (4th ed. 2006).

In support of its Section 2(f) claim, applicant submitted the declaration of Christopher Byrne, an independent toy industry consultant, who states as follows:

> In my initial product review of the BRATZ® dolls, among the details related to the product, I noticed the unique trapezoidal shape packaging that I described at the time as "beautiful."
>                    …
>
> It is my belief that when it was introduced, the trapezoidal packaging was a unique innovation in the toy industry in general and the fashion doll category in particular.
>
> Through the years, I have continued to notice that MGA has consistently marketed its BRATZ® related product in trapezoidal packaging. In my opinion, I believe MGA's trapezoidal packaging is unique and has come to be associated by consumers and retailers as indicating MGA's products and

11

specifically the BRATZ® line of fashion dolls and associated products. The conclusion is based upon both my own personal reaction to the trapezoidal packaging over the course of several years, my in-depth knowledge of toy packaging, my knowledge and ongoing review of products and discussion with consumers and retailers in the industry.

Applicant also submitted the declaration of Julie Chomo, its vice-president of nationwide sales. Ms. Chomo states that at the time of her declaration (July 2005), applicant had made substantially exclusive and continuous use of the "trapezoidal packaging" within the toy industry for more than four years; that applicant, in association with national retailers such as Target, Kmart and Toys "R" Us, places advertisements for its BRATZ products in newspapers throughout the United States; that these advertisements reach millions of consumers; that since the introduction of BRATZ dolls in 2001, applicant has sold approximately 85 million dolls in the United States alone, totaling more than $1 billion in retail sales. Finally, Ms. Chomo states her belief that:

> MGA's tremendous success with its BRATZ® brand, combined with MGA's continued efforts to advertise its line of BRATZ® dolls and accessories in conjunction with its trapezoidal shaped packaging, has created a strong visual impression in the minds of consumers, such that when consumers see the trapezoidal packaging in advertising and on store shelves they immediately

12

connect the packaging with the BRATZ® line of
dolls and related products.

Accompanying the Chomo declaration are photographs of several newspaper advertisements that feature applicant's BRATZ dolls.

Finally, applicant argues that "the PTO appears to have a well established practice of allowing registrations for marks that consist of the configuration of packaging." (Response to Office Action, 9/8/05).  With this response, applicant submitted copies of three third-party registrations.

It is the examining attorney's position that acquired distinctiveness has not been proven.  First, the examining attorney maintains that applicant is seeking to register as its mark a product configuration which is not an unusual or uncommon shape, and therefore the burden of proof for acquired distinctiveness is a heavy one.  In support of her position in this regard, the examining attorney made of record four Internet printouts.  One of the printouts is the homepage of a company named "Koolprint" which sells many types of boxes, including a "Trapezoid Box."  Another printout shows a brand of chocolates in a trapezoid-shaped package; and the two remaining printouts provide instructions for designing/making a trapezoid box.

Second, the examining attorney contends that applicant's evidence in support of the Section 2(f) claim is insufficient because such evidence speaks to the acquired distinctiveness of the box design as it relates to applicant's primary goods, i.e., toys, games and playthings, and not to the acquired distinctiveness of the box design as it relates to the identified goods, i.e., trapezoidal cardboard boxes for toys, games and playthings.

After careful review of the evidence of record, we agree with the examining attorney that applicant's evidence of acquired distinctiveness is not sufficient to permit registration of the box design as a mark for trapezoidal cardboard boxes for toys, games and playthings. The examining attorney is correct that the applicant's burden is heavier in this case because applicant seeks registration of the box design as a product configuration. In re Ennco Displays Systems Inc., 56 USPQ2d 1279 (TTAB 2000) [product configurations face a heavy burden to establish acquired distinctiveness]. See also Yamaha, supra, 6 USPQ2d at 1008 [evidence required to show acquired distinctiveness is directly proportional to the degree of non-distinctiveness of the mark at issue]. Further, with respect to applicant's contention that the Office has allowed other registrations to issue for marks that consist

14

of product configurations, as we have indicated, it is settled that we are not bound by the decisions made by examining attorneys in previous cases.  See Nett Designs, supra.

The central problem, however, with applicant's evidence is that both declarants describe the box design as product packaging rather than as a product configuration and speak of the acquired distinctiveness of the box design as it relates to applicant's primary goods, i.e., toys, games and playthings, rather than the acquired distinctiveness of the box design as it relates to the identified goods, i.e., trapezoidal cardboard boxes for toys, games and playthings.  In particular, Mr. Byrne states in his declaration that "MGA's trapezoidal packaging is unique and has come to be associated by consumers and retailers as indicating MGA's products and specifically the BRATZ® line of fashion dolls and associated products".  Similarly, Ms. Chomo states in her declaration that "when consumers see the trapezoidal packaging in advertising and on store shelves they immediately connect the packaging with the BRATZ® line of dolls and related products." (emphasis added in each instance).  Both declarants speak of consumers/retailers associating the box design with applicant's primary goods, i.e., the BRATZ line of dolls.

Neither declarant speaks of consumers/retailers associating the box design with the identified goods, namely, trapezoidal boxes for toys, games and playthings. Thus, the declarations are not probative of whether the box design has come to be associated with trapezoidal boxes for toys, games and playthings.

Finally, while we acknowledge that applicant's sales of BRATZ dolls are impressive, this evidence speaks to the success of the dolls themselves (or at most to the acquired distinctiveness of the box design as it relates to the dolls themselves). Again, such evidence is not probative of whether the box design has acquired distinctiveness with respect to the trapezoidal boxes in which the dolls are packaged.

In view of the foregoing, we find that applicant's showing is insufficient to establish acquired distinctiveness of the box design for the identified goods, i.e., trapezoidal boxes for toys, games and playthings.

**Decision**: The refusal to register applicant's box design on the ground that the identified goods do not constitute goods in trade is affirmed. If such goods do constitute goods in trade, the refusal to register the box design on the ground that, as a product design, it is not

16

inherently distinctive and has not acquired distinctiveness is also affirmed.