THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
April 23, 2008
Bucher

**UNITED STATES PATENT AND TRADEMARK OFFICE**

———

**Trademark Trial and Appeal Board**

———

In re Noon Hour Food Products, Inc.

———

Serial No. 78618762

———

Scott W. Petersen of Holland & Knight LLP for Noon Hour Food
    Products, Inc.

Myriah A. Habeeb, Trademark Examining Attorney, Law Office
    105 (Thomas G. Howell, Managing Attorney).

———

Before Bucher, Rogers and Kuhlke, Administrative Trademark
    Judges.

Opinion by Bucher, Administrative Trademark Judge:

Noon Hour Food Products, Inc. seeks registration on the

Principal Register of the mark **BOND-OST** *(in standard*

*character format)* for goods identified in the application as

"cheese" in International Class 29.[1]

This case is now before the Board on appeal from the

final refusal of the Trademark Examining Attorney to

register this designation based upon the ground that this

term is generic, and in the alternative, that applicant has

failed to show that the mark has acquired distinctiveness as

---

[1]    Application Serial No. 78618762 was filed on April 28, 2005
based upon applicant's allegation of first use anywhere and first
use in commerce at least as early as September 1910.

a source indicator.  Applicant and the Trademark Examining Attorney have fully briefed the issues in this case.  We affirm the refusals to register.

### *The Evidence in the Record:*

#### *Evidence supporting genericness:*

In support of a finding of genericness, the Trademark Examining Attorney supplied for the record references to the term "Bond-Ost" (also "bondost," "Bondost" and "Bond Ost")[2] in books on cheese, cooking or ethnic foods in general;

---

[2]  Clearly, this case involves applicant's contention that BOND-OST, including a hyphen and utilizing either all upper-case letters or at least upper-case letters B and O, is a trademark for its brand of cheese.  This contrasts with the Trademark Examining Attorney's contention that any of the various displays of the term that are referenced herein reflect a generic term for a type of cheese.  We note that minor variations in the display of a generic term (in this case, e.g., "bondost," "Bondost," "Bond Ost," or "Bond-Ost") typically are legally insignificant. For example, *Weiss Noodle Co. v. Golden Cracknel and Specialty Co*., 290 F.2d 845, 129 USPQ 411 (CCPA 1961) [HA-LUSH-KA held to be the generic equivalent of the Hungarian word "haluska"].  *See also, American Druggist Syndicate v. United States Industrial Alcohol Co*., 2 F.2d 942 (D.C. Cir. 1924) [Al-Kol is merely a phonetic or misspelling of the word "alcohol," and is merely descriptive]; *In re Vanilla Gorilla L.P*., 80 USPQ2d 1637 (TTAB 2006) [3-O'S is descriptive of automobile wheels having thirty inch rims]; *In re Wynadotte Chemicals Corp*., 155 USPQ 100 (TTAB 1984) [TES-TED is merely descriptive for detergents that have been subjected to tests].  Certainly an upper-case letter or the addition of a hyphen (or a space) cannot obviate the statutory bar to registration of a generic designation any more than can a slight misspelling of such a term.  Throughout this opinion, when discussing a particular usage or piece of evidence:  we will display the term in issue in accordance with that usage or piece of evidence; we will use "bondost" in our own references to the type of cheese at issue herein; and will use "Bond-Ost" or "BOND-OST" (i.e., the two variations with a hyphen) when referring to usage that applicant asserts to be use as a trademark.

evidence relating to use of the term in government and dairy publications, on the Internet, and in newspapers and magazines available to the purchasing public; and evidence of uses of this term in the marketplace by cheese vendors, including online suppliers and deli or cheese counters of local supermarkets or specialty shops.

In terms of the etymology of this term, the Trademark Examining Attorney has placed into the record translations for "bonde" and "ost," and concludes that it is not surprising, in view of such translations, that various references in the record refer to "bondost" as "peasant cheese":

| | Results for 'peasant' | | Results for 'cheese' |
|---|---|---|---|
| English | Swedish | English | Swedish |
| peasant | bonde | cheese | ost |

In fact, we note that the record shows a corresponding pattern for a number of other Swedish cheeses: a very similar cheese, Hushållsost, means "household cheese," with the root word *hushåll* translated as "household"; Herrgårdsost means "manor house cheese," with the root word *herrgård* translated as "manor"; and Prästost means "priest's cheese" with the root word *präst* translated as "priest."

The Trademark Examining Attorney points to a book published in 1898 referencing a Swedish cheese known as "bondost":

"… Usually in summer, the smörgåsbord contains … ; ost, cheese of various kinds shaved very thin and eaten with black bread and butter, bondost and baueruk being two favorite kinds among the peasantry …."[3]

The Trademark Examining Attorney found it probative that the United States Department of Agriculture (USDA) apparently accepts the term "Bondost" as a generic type of cheese.  This is also reflected in several secondary sources, such as the Center for Dairy Research, of the University of Wisconsin at Madison, that draw information, in part, from USDA information:

| CDR World Cheese Exchange: Bondost |
|---|
| **Brief Description :**<br>   Bondost is a Swedish, farm-type, cow's-milk cheese that has been made also in a few factories in the United States, chiefly in Wisconsin.  (USDA)<br>Country of Origin:  Sweden<br>Milk Type:  Cow<br>Cheese Type:  Farm-type<br>Flavor:  Analysis:  Moisture, 42.8 percent; fat, 29.7 percent; fat in the solids, 51.9 percent; and salt, 1.3 percent.<br>Appearance:  Cylindrical in shape, about 5 inches in diameter and 3 to 4 inches thick, weighs 2½ to 3 lbs.<br>**Source :**  USDA<br>**Description :**  Bondost is a Swedish, farm-type, cow's-milk cheese that has been made also in a few factories in the United States, chiefly in Wisconsin, for more than 30 years.  It is cylindrical in shape, about 5 inches in diameter and 3 to 4 inches thick, and weighs 2½ to 3 pounds. |

---

[3]    *THROUGH FINLAND IN CARTS*, by Ms. Alex Tweedie, published in 1898, p. 30.  This passage is also identical to a passage from *BEVERAGES, PAST AND PRESENT:  AN HISTORICAL SKETCH OF THEIR PRODUCTION, TOGETHER WITH A STUDY OF THE CUSTOMS CONNECTED WITH THEIR USE*, by Edward R. Emerson, published in 1908, p. 93.

The Trademark Examining Attorney argues that in "Dairy Plants Surveyed and Approved for USDA Grading Service," the United States Department of Agriculture again uses the term "Bondost" in a list of generic types of cheese products[4] that include, American, Brie, Cheddar and Mozzarella.

The Trademark Examining Attorney also points out that ESHA Research, the maker of nutrition and labeling software based on USDA data, lists "Bondost" in its list of 23,000 foods recognized by the USDA for nutrition and labeling purposes.  The copies of the *Foods and Food Codes Index,* and the ESHA website attached to the Trademark Examining Attorney's Office action contain the following:

> **ESHA:  #1040   Bondost Cheese-Diced**
> http://www.esha.com/eshadata/database

Additional examples of generic use, occasionally utilizing identical language, include the following:

**Cheese Glossary:**
BONDOST
> A Swedish firm cheese with a mellow flavor.  Often containing caraway seeds or cumin.
> http://lynnescountrykitchen.net/cheese/cheese.html

**A small overview of the most important world-wide cheeses**
List is based on the lists at http://lynnescountrykitchen.net/kitchen/cheese.html ,
http://www.lowell.edu/users/grundy/cheese.html

BONDOST
A Swedish firm cheese with a mellow flavour.  Often containing caraway seeds or cumin.
http://www.food-info.net/uk/dairy/cheese-list.htm

---

[4]     According to these listings of individual dairy product processing plants, one manufacturer that allegedly produces bondost is Crystal Lake Cheese Factory in Comstock, Wisconsin.

**Bondost Cheese**

A cow's milk cheese, originating from Sweden, that is made into small wheels 5 to 8 inches in diameter and 3 to 5 inches thick.  Made also in the U.S., this cheese is produced from either raw or pasteurized milk and often flavored with added ingredients, such as caraway seed or cumin.  It has a firm texture providing a mild tasting cheese that can be served as an appetizer or for snacking. When produced, it is brine cured, allowed to dry, and ready to serve in approximately 2 months.  Several varieties are cured for 1 to 2 days, while the most flavorful varieties are cured for several weeks.  Bondost cheese may also be referred to as bond ost.



http://www.recipetips.com/glossary

Authors of specialty books on Scandinavian/Swedish foods seem to use the term in the very form and listing as they do the names of other generic types of cheese:

" … number of Scandinavian cheeses are available in American markets, including Jarlsberg, Nokkleost, Havarti, Bondost, Danablu and Sagablu, and Gjerost …. "
SCANDINAVIAN FEASTS:  CELEBRATING TRADITIONS THROUGHOUT THE YEAR, by Beatrice A. Ojakangas, p. 110

"Cooperative Smörgåsbord, Menu:  …Bond Ost, Gammelost, Jarlsberg Cheeses"
SCANDINAVIAN COOKING, by Beatrice A. Ojakangas.

" … cheeses such as Bondost or caraway in huge bricks from Wisconsin or Scandinavia…."
MINNESOTA ETHNIC FOOD BOOK, by Anne R. Kaplan, Marjorie A. Hoover, Willard B. Moore, p. 134.

Consistent with this latter reference, another book excerpt placed into the record suggests a somewhat different product in Sweden and in the United States:

**Bondost**
  *Sweden*   When caraway seed is added this is called Kommenost, spelled Kuminost in Norway

**Bond Ost**
  *U.S.A.*
     Imitation of Scandinavian cheese, with small production in Wisconsin.
THE COMPLETE BOOK OF CHEESE, by Robert Carlton Brown
Etext from Abacci Books Online found at
     http://www.abacci.com/books/book.asp?bookID=5174

Applicant's specimens say "Made in the U.S.A," so it seems likely that applicant manufactures or contracts for the manufacturing of the domestic cheese listed above – the Wisconsin product.  Although we presume both domestic and imported bondost cheese are available in the United States, there is no indication in the record that applicant is also a distributor of any cheese imported from Scandinavia. Accordingly, where copies of merchants' promotions placed into the record by the Trademark Examining Attorney refer to the product as being imported from Sweden, such usage appears not to indicate applicant as the source of the cheese, but instead to indicate a type of cheese:

**FOODS FROM SWEDEN:**
Swedish Cheese
Bondost Cheese - Imported from Sweden (plain) — $7.95/lb.
     http://www.scandinavian-south.com/additionalfoods.htm



**Farmer Cheese**
("Bondost") an imported semi-soft mild cheese by Scandic of Sweden, 2.3 – 2.5 lbs (about) $17.95

http://swedensfinest.com/

**McChesney & Miller**, Glen Ellyn, IL,
Dairy Department

Our Dairy department has all the brands you know, plus a few that other stores don't carry. Our dairy case in aisle 1 contains most of our products. Another cooler located near the checkouts contains even more of our unique dairy products. Here's [sic] just a few of the dairy brands we have for you to choose from.

- Scandinavian Danish Bondost Cheese http://mcchesneyandmiller.com/dairy.html

The Trademark Examining Attorney points to writers who use the term "bondost" as a single word in all lower-case letters:

HEADLINE: Food Maintains Her Link to Swedish History
…
For Christmas or other special occasions, Suzy lays the buffet with Swedish meatballs, … lingon berries, pickled herring, bondost cheese, pickled beets and hard tack for the bread tray….
*Chicago Daily Herald*, March 31, 1999

Other Scandinavian Christmas foods that have been brought to Albuquerque include glug, a drink made of brandy, wine, cardamom, orange peel, and allspice that is consumed at Christmastime, herring, pickled beets, lutefisk, caraway cheese, which is called bondost and silte, which is pressed pork and veal and takes hours to make.
http://www.abqarts.org/cultural/survey/scandinavia-cs.htm

***What you need to know***

Olsburg Lutheran Church 48th Annual Swedish Supper

History:

From "A Centennial History of Olsburg, Kansas", 1980. "VALKOMMEN" -- Welcome to the Swedish Supper! In the mid 1950's the congregation began the annual Swedish Supper tradition. This supper is served on the first Saturday evening of December and involves the entire congregation in its planning, preparation and serving. The event has become so successful that it is unnecessary to advertise it to draw over 600 persons from miles away to enjoy the dinner of lutfisk, potatis korv, bruna boner, sill, sill sallat, bondost, ragbrod, ost kaka, frukt soppa, lingon, kram, and many more Swedish dishes. The Supper officially ushers in the Christmas season in Olsburg as the entire town is decorated with lights and tinsel, and Christmas music wafts over the town from the carillon in the belfry of the church. "VAR SA GOD AND TACK SA MYCKET!"

http://www.olsburg.com/index.cfm?pageTitle=Events


"I have a great son-in-law and he has requested a Swedish cheese that I cannot find anywhere" emailed Fern Kosh. "The cheese is apparently spelled bondost or bundust."

Column by Heidi Knapp-Rinella, food critic for the *Las Vegas Review-Journal*, April 25, 2001.


### ***Applicant's arguments for registrability:***

By contrast, applicant argues that BOND-OST, as shown at right and below, has been its trademark in the United States now for almost one-hundred years, having been registered for seventy-one of those years and that its registration was only recently, inadvertently cancelled:



*(Applicant's specimen)*

# BOND-OST [5]

In support of registrability, applicant argues it is significant that the word "bondost" is absent from any referenced dictionary, as well as from listings of Swedish cheeses in *THE POCKET GUIDE TO CHEESE*, by Barbara Ensrud (1981); *THE WORLD ATLAS OF CHEESE*, by Adrian Bailey; and *CHEESE PRIMER*, by Steven Jenkins, as well as in www.Wikipedia.com.

Applicant has provided Internet sources where vendors display its product in packaging substantially identical to the specimen of record. Applicant also points out that most appearances in the record of "Bond-Ost," "Bond Ost" or even "Bondost"

[6]

involve initial uppercase letters, and contends that these illustrate correct usage in context as applicant's trademark. Additionally, applicant argues that it is quite clear that some of the uses the Trademark Examining Attorney has highlighted as evidence supporting the genericness

---

[5] Registration No. 0280892, issued on March 3, 1931, claiming first use on "cheese" as of September 1910. "No claim is made to the word "OST" apart from the mark as shown." Third Renewal in 1992, Assigned to Noon Hour Food Products, Inc. as of December 20, 1995; Expired 2002.

[6] http://www.nordichouse.com/detail.aspx?ID=42

refusal actually are references to applicant's cheese product.

For example, according to a declaration in the record, applicant's counsel called Avanti Foods[7] and confirmed that the excerpt from Avanti that the Trademark Examining Attorney placed into the record is a reference to applicant's product.  After the initial refusal, applicant submitted to the Trademark Examining Attorney this email exchange between Scott Achenbach of Scotts Thriftway[8] and Scott W. Petersen, applicant's counsel:

> *From:   scott.Petersen@hklaw.com*
> *To:   scotts@ks-usa.net*
> *Sent:  Wednesday, December 21, 2005 2:14 PM*
> *Subject:  Bond Ost Cheese*
> *Is the Bond Ost cheese that you offer the Bond-Ost*
> *    made  by  Noon  Hour  Foods?   Thank  you  very*
> *    much!*
> *Scott*
> *Holland+Knight, Partner*

> *From:   Scott Achenbach [scotts@ks-usa.net]*
> *Sent:  December 21, 2005 3:26 PM*
> *To:   scott.Petersen@hklaw.com*
> *Subject:  Re: Bond Ost Cheese*
> *Scott, Yes it is.   Scott*

---

[7]    **Avanti Foods**, Walnut, IL http://www.avantifoods.com/order.html

[8]    **Scotts Thriftway** – For all your unique Swedish Foods (Lindsborg, KS)   http://www.lindsborg.org/scotts/

According to another declaration from applicant in the record, the website of Leisure and Sports Review[9] that the Trademark Examining Attorney placed into the record is a clear reference to applicant's product.

Applicant argues that other commercial websites selling bondost cheese are referencing applicant's cheese (even if it appears as Bondost, and not Bond-Ost):

**Wikstroms' Scandinavian Foods & Gifts**:  American Bondost with Caraway Seeds *made by Noon Hour* http://www.wikstromsgourmet.com/

The following two articles with the same byline (David Nelson) were about the same gathering, printed pages apart from each other on the same day's newspaper (where we note that the journalist used it as two words, but once without a hyphen and a second time with a hyphen):

**The San Diego Union-Tribune.**     *November 18, 2004, p. 78*

**A Christmas Smörgåsbord**

| Appetizers: … | Assorted cheeses, both Swedish and American (including Bond Ost, which means farmers cheese, available at IKEA) |
| --- | --- |

---

[9]     **Leisure and Sports Review**:  Travel and Recreation Catalog Stromsburg, Nebraska Events:  Swedish Festival - - On the third weekend in June of each year everyone in Stromsburg becomes Swedish at heart …  Add to this various kinds of cheeses, including Bond-Ost, a true cheese lover's delight! http://www.lasr.net/leisure/nebraska/polk/stromsburg/att8.html

**The San Diego Union-Tribune.** *November 18, 2004, p. 74*

**Holiday party with authentic offerings brings neighborhood together**

…

A lesson: Southern California transforms everyone, even Scandinavian hostesses raised with rigidly formal traditions. The Mission Valley branch of IKEA, the Swedish home-furnishings store whose gourmet corner stocks tinned herring, fragrant Bond-Ost cheese, tart lingon-berry preserves and frozen pastries, also helped relieve the pressure, although [Eva B.] Goode still cooked for days.

In addition to the evidence that individual vendors such as Avanti Foods, Scotts Thriftway and Wikstroms' Scandinavian Foods and Gifts recognize applicant as a source of cheese, applicant has submitted a declaration stating that it distributes its cheese products through various entities, including IKEA, the source for the Bond-Ost cheese of the above-reviewed San Diego hostess.

Finally, applicant contends that because of the familiar description of the goods, promotional websites like the Viking Trader Gifts site placed into the record by the Trademark Examining Attorney are probably referencing applicant's cheese even if they do not explicitly reference Noon Hour Food Products:

**Viking Trader Gifts**, Bemus Point, NY, "Entertaining at Home," website then included a "snack package" containing within it "1 lb. 4 oz. Bond Ost cheese"
http://www.vikingtradergifts.com/ehome.html

### *Inconclusive evidence:*

Some sources, including those shown below, were more ambiguous, inconclusive or entitled to limited probative value.  It is beyond question that the editor of a single dictionary, for example, cannot through inadvertence or mistake take away the proprietary rights of a legitimate trademark owner.  This principle would certainly apply to individual bloggers, columnists or authors:

> **The Mote**, an open discussion forum with one thread called "*The Good Life*" for "Gardeners, Cooks, Oenophiles, DIYers, Naturalists, People and their Pets" with host "arkymalarky" contained the following exchange:

> > *2355. Ronski - 12/10/2004 4:49:15 AM*
> > *Btw, Pelle, I recently had a Swedish cheese called Bond Ost.  It was almost orange, with caraway seeds, semi-soft, and quite good.*
> > *Is it something common?*

> > *2356. PelleNilsson - 12/11/2004 7:24:02 PM*
> > *I'm not familiar with the name (it means Peasant's Cheese) but caraway spiced cheese is not uncommon.  In fact we use[d] to make our own for Christmas from grated strong hard cheese, caraway seeds, a spoonful or two of cognac and butter… It makes a fine relish and a nice give-away.  It is called 'potkes' in Swedish, obviously from 'pot cheese'.*

> > *2360. Ronski - 12/11/2004 11:17:11 PM*
> > *Pelle,*
> > *Thanks for the cheese info. I think I'll try making that. It sounds a little bit like what we in my family call "Oma's cheese," which is made for holiday parties …. Caraway seed is optional in this dish (but must always grace pork, duck, and rye bread).*
> >
> > http://www.themote.com/viewThread.asp?thread=141&Back=2374

HEADLINE:  God Jul (Merry Christmas!) Christmas preparations begin before St. Lucia Day in this Swedish Family"

…

The food items do include Bondost cheese – a must; pickled herring and bruna bönor beans ….
*The Topeka Capital-Journal*, December 12, 2001

---

HEADLINE:  Family Ties Celebrated at Family Dinner

…

Eighty-five members of the [extended family] brought their favorite dishes which featured Swedish meatballs, pickled herring … and Swedish Bondost cheese with limpa bread.
*Chicago Daily Herald*, February 27, 2004

---

HEADLINE:  A LIFETIME OF WORK, AND NOW HE'S THE BIG CHEESE AROUND MONROE
A Norwegian cheesemaker in the middle of Little Switzerland?

…

He started out making brick, Muenster and Bondost, a Swedish cheese.
*Wisconsin State Journal*, March 21, 1999.

---

## *Analysis*

### *What is the class of goods?*

Applying the two-part test for genericness taken from *H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 228 USPQ 528 (Fed. Cir. 1986), we find that the genus is aptly described by the identification of goods itself, namely, "cheese."

### ***Does the relevant public understand BOND OST primarily to refer to that class of goods?***

The second question is whether or not the relevant public understands the designation primarily to refer to the involved class or genus of goods.  We find that the relevant class of consumers would be ordinary consumers of cheese, including consumers of specialized, ethnic cheese – a fact that is also reflected in the record.  Evidence of the public's understanding of a term may be obtained from any competent source, including dictionaries, trade journals, newspapers and other publications.  *See In re Merrill Lynch, Pierce, Fenner and Smith Inc.*, 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987), and *In re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 227 USPQ 961, 963 (Fed. Cir. 1985).

We agree with applicant that some of the evidence in the record regarding the version of bondost cheese available in the United States involves references to cheese from applicant.  Yet, the unequivocal trademark usage of Bond-Ost is limited to usage by applicant and perhaps a few of its vendors.  We note that even some users who utilize applicant as a source of cheese nonetheless refer to the cheese from applicant in a generic manner.  For example, the Wikstroms' reference to "American Bondost"

does not utilize a hyphen or an upper case letter "O" and implies that there is a foreign bondost and a domestic bondost, in this case, from Noon Hour.

Particularly in the cases seen above where writers use the term "bondost" as a single word in all lower-case letters, the presumption to be drawn from such references is that it is perceived, at least by the author, as a generic type of cheese.

Conversely, applicant relies upon the presumption that usage showing bondost in upper-case letters in a seemingly correct trademark manner, "Bond Ost" or "Bondost cheese" is a reference to applicant's product, e.g.,

> **Goldfield Cheese Mart**, Goldfield, Iowa
> Item "#05" for "Bondost"
> http://www.goldfieldcheesemartinc.com/cheese.htm

We do not agree with applicant that such references are in fact evidence of trademark use merely because of the use of an upper-case letter "B."  As to initial upper-case letters, there does not seem to be a clear pattern of use in this record as applied to any and all types of historically Scandinavian cheeses.  In fact, we note that the names of many generic types of cheese are capitalized, as can be seen in many of the above references. Accordingly, we conclude from the totality of the evidence

in this record that others frequently use even the terms Bondost and Bond Ost as generic designations.

The much less frequent, unequivocal trademark usage is by applicant and perhaps a few of its vendors. However, on a record like this, applicant cannot avoid a finding of genericness merely because it has become the primary supplier of a U.S. version of a Swedish-style, farm-type, cow's-milk cheese to merchants of cheeses, including specialty retailers. No amount of usage or promotion will imbue an applicant with trademark rights in a generic term. Thus, while the evidence in this record does not all point uniformly in the same direction, the weight of the evidence in this record is consistent with finding that members of the relevant public understand both "bondost" and "Bond-Ost" primarily to refer to Swedish, farm-type, cow's-milk cheese, or an American version thereof, rather than a particular source of cheese.

In summary, while the evidence does show that some U.S. retailers understand the marketplace reality that there is essentially one significant source for Bond-Ost cheese manufactured in the United States, there is still widespread generic use of the term. And there is certainly substantial probative evidence of generic use by the USDA, authors who

specialize in Swedish foods, in newspaper articles, on the Internet and among members of the general public.  The reality seems to be that the bondost cheese that some purveyors sell is applicant's Bond-Ost cheese, and some of these purveyors may recognize that fact, but they, and many others, nonetheless use bondost, Bondost or Bond Ost to refer to a type of cheese, rather than a brand of cheese. There were no references we found in this entire record to usages such as Bond-Ost *brand* cheese – just Bond-Ost (or bondost, Bondost, or Bond Ost) cheese.

While applicant refers to its "BOND-OST® Scandinavian Style Cheese" in its promotional pieces – seeming to use an upper case name, with the formal registration symbol and a clear form of a generic designation – directly below that is one of the only places in this record we see the term "*brand*," but that is not used with Bond-Ost but rather is used in





conjunction with applicant's house mark, "Noon Hour."

The Trademark Examining Attorney has the burden of demonstrating that the public perceives "Bond-Ost" to be a generic designation for a type of cheese based upon clear evidence of generic use. *Merrill Lynch*, 4 USPQ2d at 1143; and *In re American Fertility Society*, 188 F.3d 1341, 51 USPQ2d 1832 (Fed. Cir. 1999). In this case the burden is met, as we find the evidence clearly places applicant's mark in the category of a generic term. The myriad examples that the Trademark Examining Attorney has placed into the record clearly show that BOND-OST "tell[s] you what the thing is." *In re Abcor Development Corp.*, 588 F.2d 811, 200 USPQ 215, 219 (CCPA 1978) (Rich, J., concurring). The evidence relied upon by applicant simply is not sufficient to rebut this clear showing.

We find that overall, this record stands in contrast to the facts of another trademark case involving a cheese, called MONTRACHET. *See In re Montrachet S.A.*, 878 F.2d 375, 11 USPQ2d 1393 (Fed. Cir. 1989). In that case, for example, there was no dispute that the term MONTRACHET originated as a designation of the source of appellant's goat cheese. By contrast, we have documentary evidence herein that the term "bondost" was used in Sweden as early

as the nineteenth century.  Additionally, unlike the record

in the instant case, a large number of publications,

including dictionaries or encyclopedias of cheese, actually

listed MONTRACHET as a brand of goat cheese.  11 USPQ2d at

1394-95.  Accordingly, in the *Montrachet* case, the Court of

Appeals for the Federal Circuit concluded the weight of the

evidence was contrary to the Board's finding that

"*Montrachet*" was a generic designation.  *Contra In re*

*Bongrain Int'l Corp.*, 17 USPQ2d 1490 (TTAB 1990) ["*Baby*

*Brie*" not registrable for cheese]; and *In re Cooperativa*

*Produttori Latte E Fontina Valle D'Acosta*, 230 USPQ 131

(TTAB 1986) ["*Fontina*" is the name of a type of cheese].

In some respects, this fact pattern (e.g., mixed uses

with some showing recognition of a single source and many

more showing generic use) parallels the situation presented

in the decision of *In re American Institute of Certified*

*Public Accountants*, 65 USPQ2d 1972 (TTAB 2003).  That

applicant argued that because it is the sole preparer of

the licensing test for certified public accountants, "all

evidence of record necessarily points to applicant as the

source of the 'CPA EXAMINATION' even when applicant is not

specifically identified."  *American Institute of Certified*

*Public Accountants*, 65 USPQ2d at 1980.  The Board

disagreed, and affirmed a requirement for a disclaimer of the designation "CPA Examination" as a generic term.

As in the case of the *American Institute of Certified Public Accountants*, the seeming duality herein may have historical roots. Several books identify "bondost" (without any upper case letters, a space or a hyphen) as a generic designation for a cheese from Sweden, with references dating back as far as 1898. This is clearly a dozen years prior to the date that one of applicant's predecessors in interest allegedly adopted the involved term "Bond-Ost" in the United States. Not surprisingly, Bond Ost (having a space and a capital letter O in Ost) or Bond-Ost (having a hyphen and a capital letter O in Ost) often appear to refer to a similar form of Scandinavian-style cheese produced in the U.S. Midwest.

The reasonable inferences to be drawn from this history is that for more than one-hundred ten years, the term "bondost" has been a generic designation for a Swedish, farm-type, cow's-milk cheese. Yet, in March 1931, a single U.S. producer of substantially the same type of cheese was granted a trademark registration for BOND-OST for cheese.

As long as applicant (and its predecessors in interest) maintained the '892 registration, and no one sought to cancel the registration under Section 14 of the Act, applicant and its predecessors were able to claim source-indicating rights in this term, and were legally authorized to use the official trademark registration symbol next to the term, as the record shows it was doing. From applicant's vantage point, it is most unfortunate that the registration was allowed to expire.

However, on this record, when faced with the totality of the evidence, including applicant's claim of long use resulting in acquired distinctiveness, we must conclude that the Trademark Examining Attorney has met the burden placed on the United States Patent and Trademark Office to prove that bondost is a generic term for a type of cheese. All of this evidence persuades us that the relevant public does not distinguish between bondost and its several variations. The members of the relevant public primarily perceive all the variations of this term as generic, even if a subset of that public draws an association between applicant and its Bond-Ost cheese. Hence, the variation applicant seeks to register, BOND-OST, would also be seen by most as a generic term.

### ***Applicant's Claim of Acquired Distinctiveness***

Of course, a generic term cannot be appropriated exclusively as a trademark irrespective of the length of use or level of promotional efforts. Nonetheless, applicant has argued in the alternative, that in the event its mark should be found not to be generic, that it has acquired distinctiveness as a result of its long use of the term and that registration is, therefore, sought under Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f). According to its brief, applicant submitted the declaration of Scott W. Petersen "that this mark has acquired distinctiveness under Section 2(f)" of the Act. Accordingly, we accept the contention that the application was amended during prosecution, in the alternative, to include a claim that the mark has acquired distinctiveness. Nonetheless, the Trademark Examining Attorney argues that should the designation "Bond-Ost" be deemed not to be generic, that applicant has failed to make a sufficient showing of acquired distinctiveness under Section 2(f) of the Act.

Applicant clearly has the burden of proof to establish a *prima facie* case of acquired distinctiveness. *Yamaha International Corp. v. Hoshino Gakki Co., Ltd*., 840 F.2d 1572, 6 USPQ2d 1001, 1006 (Fed. Cir. 1988). We must

determine whether or not appellant has proven acquired distinctiveness by a preponderance of the evidence. The greater the degree of descriptiveness, the greater the evidentiary burden on the user to establish acquired distinctiveness. *Yamaha Int'l.*, 6 USPQ2d at 1006; *Merrill Lynch,* 4 USPQ2d at 1143; *Restatement (Third) of Unfair Competition* (1993), Section 13, comment e. *See Tone Brothers, Inc. v. Sysco Corp.*, 28 F.3d 1192, 31 USPQ2d 1321 (Fed. Cir. 1994) [the party attempting to establish legal protection for its mark has the burden of proving acquired distinctiveness by a preponderance of the evidence].

In the event that "Bond-Ost" ultimately should be determined not to be generic, in spite of applicant's showing of nearly a hundred years of use in commerce, we find that applicant has failed to make a *prima facie* case of acquired distinctiveness herein in light of the highly descriptive nature of the "Bond-Ost" designation.[10] Applicant has provided no information about the volume of its sales under this alleged mark, the amount of money that applicant has expended in promoting its cheese products under the designation sought to be registered, or what market share it has for its version of a Swedish, farm-

---

[10]    See 15 U.S.C. § 1052(f) and 37 C.F.R. § 2.41(b).

type, cow's-milk cheese sold in the United States. Finally, applicant has provided no direct evidence that the majority of the relevant consumers of its cheese view the term "Bond-Ost" as a source-identifier.

Accordingly, taking into consideration the entire record herein, we find that applicant has failed to make a sufficient showing of acquired distinctiveness under Section 2(f) of the Act to permit registration of this term.

*Decision*:  The refusal under Section 2(e)(1) on the ground of genericness is affirmed, as is the alternative refusal on the ground of mere descriptiveness due to the insufficiency of applicant's showing of acquired distinctiveness.