This Opinion is a
Precedent of the TTAB

Mailed: September 26, 2014

## UNITED STATES PATENT AND TRADEMARK OFFICE

————

## Trademark Trial and Appeal Board

————

*In re Koninklijke Philips Electronics N.V.*

————

Serial No. 85092079

————

Clark A. Puntigam of Jensen & Puntigam PS for Koninklijke Philips Electronics N.V.

Dannean J. Hetzel, Trademark Examining Attorney, Law Office 106 (Mary I. Sparrow, Managing Attorney).

————

Before Kuhlke, Wolfson and Lykos, Administrative Trademark Judges.

Opinion by Lykos, Administrative Trademark Judge:

Koninklijke Philips Electronics N.V. ("Applicant") has filed an application to register on the Principal Register the proposed mark displayed below



Base Assembly

for "toothbrush head for electric toothbrushes" in International Class 21.[1] Applicant

seeks to register the mark pursuant to Section 2(f) of the Trademark Act, 15 U.S.C.

§ 1052(f), asserting that it has acquired distinctiveness. The description of the mark

was ultimately amended to the following:

> The mark consists of a base assembly of an electric toothbrush. The base assembly includes a base or lower portion, approximately 1 ½ inches high, with the lower edge thereof being circular, approximately 7/8 inches in diameter. On the base portion, ovals appear in the middle thereof, going around the entire base portion. The diameter of the base portion remains the same from the lower edge to a point approximately 5/8 inch from the lower edge and then curves inwardly gradually and smoothly to an upper edge. Extending from the upper edge of the base portion is an intermediate portion. The intermediate portion has two parts. The first part has a lower edge which mates with the upper edge of the base portion and has an upper edge which is angled approximately 10° from the longitudinal axis of the base portion. The exterior of the first part continues the slight inward curve of the base portion. The second part mates with the upper edge of the first part and has an upper edge which mates with the lower edge of an extending stem portion. The exterior surface of the second part has a greater curvature than the first part, such that the boundary between the first and second parts is discernable. Extending from the upper edge of the intermediate portion is the stem portion which is circular in cross-section and is elongated. At the upper end of the stem portion is a

---

[1] Application Serial No. 85092079, filed July 23, 2010, pursuant to Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging October 5, 2002 as the date of first use anywhere and in commerce. The initial refusal that Applicant's proposed mark appears to be a functional design for the identified goods pursuant to Trademark Act Section 2(e)(5), 15 U.S.C. §1052(e)(5), was withdrawn.

Concurrent with its trademark application, Applicant filed a "Petition to Make Special," on the grounds that "[a] third party has begun marketing replacement brushheads having an identical product design. This Petition to Make Special is necessary in order to obtain as quickly as possible a trademark registration which can be used to stop infringement of applicant's trademark rights." The Office of Petitions of the Commissioner for Trademarks granted Applicant's petition to make special on August 19, 2010. *See* Trademark Rule 2.146.

bristle plate portion with toothbrush bristles. The stem portion extends at an angle of approximately 10° relative to the longitudinal axis of the base portion. <u>The matter shown in broken lines, specifically the bristle plate portion, toothbrush bristles and stem portion are not part of the mark and serve only to show the position of the mark.</u> (Emphasis added.).[2]

Color is not claimed as a feature of the mark. Applicant's specimen of use is as follows:



Applicant has appealed the Trademark Examining Attorney's final refusal to register Applicant's base assembly design pursuant to Trademark Act Sections 1, 2, and 45, 15 U.S.C. §§ 1051-1052, 1127, on the ground that the proposed mark fails to function as a mark because it consists of a nondistinctive product design that is not registrable on the Principal Register without proof of acquired distinctiveness under

---

[2] The arrow and shadow box are not part of Applicant's proposed mark. In essence, Applicant seeks to register as a mark a portion of the design of its product, specifically, the base assembly of the brushhead for an electric toothbrush. For consistency, when referring to the mark, we shall use the terminology "base assembly," as we have done in the illustration, and when referring to the brushhead product that includes the base assembly, we will refer to the "base assembly product."

Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f), and that the proffered evidence of such distinctiveness is insufficient. For the reasons explained below, we affirm the refusal to register.

A product design or, as in this case, the design of a portion of a product, "is not inherently distinctive." *Wal-Mart Stores Inc. v. Samara Bros. Inc.*, 529 U.S. 205, 54 USPQ2d 1065, 1068 (2000). However, a product design that provides no real utilitarian advantages to the user, but is one of many equally feasible, efficient and competitive designs, such as the product design at issue here, may be registrable upon a showing of acquired distinctiveness pursuant to Section 2(f). *See id.* at 1076. *See also In re Slokevage*, 441 F.3d 957, 961, 78 USPQ2d 1395, 1398 (Fed. Cir. 2006). The kind and amount of evidence necessary to establish that a mark has acquired distinctiveness in relation to goods or services depends on the nature of the mark and the circumstances surrounding the use of the mark in each case. *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 6 USPQ2d 1001, 1008 (Fed. Cir. 1988); *Roux Labs., Inc. v. Clairol Inc.*, 427 F.2d 823, 829, 166 USPQ 34, 39 (CCPA 1970); *In re Hehr Mfg. Co.*, 279 F.2d 526, 126 USPQ 381, 383 (CCPA 1960). Section 2(f) of the Trademark Act provides in relevant part:

> Except as expressly excluded in subsections (a), (b), (c), (d), (e)(3), and (e)(5) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Director may accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made.

The underlying rationale of Section 2(f) has been explained as follows:

> [U]nlike the first five sections of 15 U.S.C. §1052 which define the grounds upon which a trademark registration is to be refused, Section 2(f) serves as an exception to a rejection under the provisions of one of the other sections, Section 2(e) (citation omitted). Section 2(f) permits registration of marks that, despite not qualifying for registration in light of Section 2(e), have nevertheless "become distinctive of the applicant's goods in commerce." Thus, "Section 2(f) is not a provision on which registration can be refused," ... *but is a provision under which an applicant has a chance to prove that he is entitled to a federal trademark registration which would otherwise be refused.*

*Yamaha*, 6 USPQ2d at 1007 (quoting *In re Capital Formation Counselors, Inc.*, 219 USPQ 916, 917 n.2 (TTAB 1983)) (emphasis added). "The statute is silent as to the weight of evidence required for a showing under Section 2(f) 'except for the suggestion that substantially exclusive use for a period of five years immediately preceding filing of an application may be considered prima facie evidence.'" *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 1125, 227 USPQ 417, 422 (Fed. Cir. 1985) (quoting *Hehr*, 126 USPQ at 382-83). Trademark Rule 2.41, 37 C.F.R. § 2.41, entitled *"Proof of distinctiveness under section 2(f)*," fills in this gap, stating in relevant part:

> **Subsection (a)**...applicant may, in support of registrability, submit with the application, or in response to a request for evidence or to a refusal to register, affidavits or declarations in accordance with § 2.20, depositions, or other appropriate evidence showing duration, extent and nature of use in commerce and advertising expenditures in connection therewith (identifying types of media and attaching typical advertisements), and affidavits, or declarations in accordance with § 2.20, letters or statements from the trade or public, or both, or other appropriate evidence tending to show that the mark distinguishes such goods or services.

> **Subsection (b)** In appropriate cases, ownership of one or more prior registrations on the Principal Register or under the Act of 1905 of the

same mark may be accepted as prima facie evidence of distinctiveness. Also, if the mark is said to have become distinctive of applicant's goods by reason of substantially exclusive and continuous use in commerce thereof by applicant for the five years before the date on which the claim of distinctiveness is made, a showing by way of statements which are verified or which include declarations in accordance with § 2.20, in the application, may in appropriate cases, be accepted as prima facie evidence of distinctiveness. *In each of these situations, however, further evidence may be required.*

(emphasis added). Establishing acquired distinctiveness by "further" or "actual"[3] evidence was explained in *Owens-Corning Fiberglas*, 227 USPQ at 422:

An evidentiary showing of secondary meaning, adequate to show that a mark has acquired distinctiveness indicating the origin of the goods, includes evidence of the trademark owner's method of using the mark, supplemented by evidence of the effectiveness of such use to cause the purchasing public to identify the mark with the source of the product.

The courts have provided further guidance, stating that in determining acquired distinctiveness, relevant factors may include "copying, advertising expenditures, sales success, length and exclusivity of use, unsolicited media coverage, consumer studies (linking the name to a source)." *In re Steelbuilding.com*, 415 F.3d 1293, 75 USPQ2d 1420, 1424 (Fed. Cir. 2005) (citing *Cicena Ltd. v. Columbia Telecomms. Group*, 900 F.2d 1546, 14 USPQ2d 1401 (Fed. Cir. 1990)). *See also Coach Servs. Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 101 USPQ2d 1713, 1729 (Fed. Cir. 2012). No single factor, however, is determinative. *In re Steelbuilding.com*, 75 USPQ2d at 1424.

---

[3] The Trademark Manual of Examining Procedure ("TMEP") § 1212 (April 2014) uses the term "actual evidence" of acquired distinctiveness in referencing Trademark Rule 2.41(a). We further note that some courts interchangeably use the terms "acquired distinctiveness" and "secondary meaning."

In cases of product design, the evidence provided to establish acquired distinctiveness must relate to the promotion and recognition of the specific configuration embodied in the applied-for mark and not to the goods in general. *See Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 214 USPQ 1, 4 n.11 (1982) ("To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself."); *see, e.g., In re Bongrain Int'l Corp.*, 894 F.2d 1316, 1318, 13 USPQ2d 1727, 1729 (Fed. Cir. 1990) (sales success may not suffice to prove that a mark has acquired distinctiveness where other marks were featured along with it or where sales growth could be attributed to the product's popularity; *In re McIlhenny Co.*, 278 F.2d 953, 956-57, 126 USPQ 138, 140-41 (CCPA 1960) (promotion of a bottle design bearing other trademarks insufficient under § 2(f) to show that the public views the bottle design alone as a trademark). *Cf. In re Chem. Dynamics, Inc.*, 839 F.2d 1569, 1571, 5 USPQ2d 1828, 1830 (Fed. Cir. 1988) (5 years' use of composite mark does not speak to the issue of whether a component is viewed by itself as a mark); *In re Soccer Sport Supply Co.*, 507 F.2d 1400, 1403, 184 USPQ 345, 348 (CCPA 1975) (advertising of a design along with word marks lacked the "nexus" that would tie together use of the design and the public's perception of the design as an indicator of source).[4]

---

[4] *See also In re ic! berlin brillen GmbH*, 85 USPQ2d 2021, 2023 (TTAB 2008); *In re Edward Ski Prods. Inc.*, 49 USPQ2d 2001, 2005 (TTAB 1999); *In re Pingel Enter. Inc.*, 46 USPQ2d 1811, 1822 (TTAB 1998).

The sole issue before us, therefore, is whether Applicant has overcome the refusal of its mark as a nondistinctive product design by making a *prima facie* showing that the relevant consumers perceive the product design of the "base assembly" of Applicant's "toothbrush head for electric toothbrushes" as a trademark. Applicant bears the burden of proving that its product design has acquired distinctiveness. *Yamaha*, 6 USPQ2d at 1004; *In re Hollywood Brands, Inc.,* 214 F.2d 139, 102 USPQ 294, 295 (CCPA 1954) ("There is no doubt that Congress intended that the burden of proof [under Section 2(f)] should rest upon the applicant …."). Whether acquired distinctiveness has been established is a question of fact. *In re Becton, Dickinson and Co.*, 675 F.3d 1368, 1372-73, 102 USPQ2d 1372, 1375 (Fed. Cir. 2012).

In support of its claim of acquired distinctiveness, Applicant has introduced the following evidence:

● A statement verified by Applicant that the mark has become distinctive of the Applicant's goods by reason of substantially exclusive and continuous use in commerce for at least five years prior to February 28, 2011 (the date when Applicant asserted its claim of distinctiveness during *ex parte* prosecution). Applicant further adds that its proposed mark has been in use in commerce for a longer period of time, namely, over ten years.

● A claim of ownership of Registration No. 2733754 owned by Philips Oral Healthcare, Inc., a "member" of Applicant's "group" of companies. Applicant acknowledges that said registration has been cancelled for failure to file a Trademark Act Section 8 declaration of continuing use, and that the mark while "substantially the same" as the proposed mark at issue here, is not identical. Nonetheless, Applicant maintains that the registration constitutes "significant evidence of acquired distinctiveness." Applicant's Brief, p. 2.

● Further evidence of acquired distinctiveness, consisting of Applicant's statement that between 2002-2011, over 72 million units of Applicant's goods were sold in the United States (Response to Office Action 2012), as well as the

following sales data, volume and U.S. dollar figures, for the years 2006-2012 for "individual units of the brushhead" "sold separately from the power toothbrush itself."[5] (November 22, 2013 Request for Reconsideration):

| Year | Invoiced Volume (Packs) | Invoiced Dollar Amount |
|------|-------------------------|------------------------|
| 2006 | 5,684,136 | 107,910,202 |
| 2007 | 5,516,792 | 114,055,927 |
| 2008 | 4,251,619 | 107,667,949 |
| 2009 | 4,068,043 | 106,698,252 |
| 2010 | 3,376,705 | 106,419,700 |
| 2011 | 3,963,485 | 99,145,282 |
| 2012 | 3,765,418 | 91,161,761 |

● Two samples of product packaging of Applicant's competitors as set forth below. As to these samples, Applicant contends, "This reference by competitors in their packaging [that the products are "designed to fit" applicant's products] would indicate that customers of Applicant's goods generally perceive the configuration of the stated goods as an indication of source of genuine goods, the essence of a trademark. Customers "look for" the particular configuration of the stated goods, i.e. the mark set forth in this application. Accordingly, the stated mark has acquired distinctiveness." May 8, 2012 Response to Office Action. (emphasis in original; bracketed material added).

---

[5] In discussing this evidence, Applicant has in some instances referred to its proposed mark as the "brushhead." We note, however, that this results in some confusion as, per Applicant's description of the mark, the "brushhead" is not claimed as part of the mark. Rather, the mark consists of the base assembly of the electric toothbrush brushhead, which assembly includes "oval" indentations. *See* Description of the Mark, *supra*. Thus, we consider all references by Applicant to sales of units of the brushhead as meaning sales of not the disclaimed portion of its product but of the entire base assembly product. And we consider references to the "power toothbrush" itself to mean the electric toothbrush handle to which the base assembly product is connected to create a complete electric toothbrush.









● A submission which Applicant characterizes as a display clipped from Amazon, shown below, purportedly showing that "competitors use a photograph of their own goods (replacement brushheads) highly prominently (by relative size), featuring applicant's Mark [the base assembly product], while referencing applicant's goods….This display illustrates an infringing use of applicant's Mark [the base assembly product design], i.e. misleading the consumer into believing they are purchasing applicant's goods by treading on the long established goodwill of applicant in its … Mark." Applicant's Brief, p. 3.



Philips Sonicare HX7022 Eseries Standard Replacement Brush Heads
$17.99 Prime
More Buying Choices
$15.42 new (2 offers)
☆☆☆☆☆ (13)
Product Features
... replacement brush heads; stand
Health & Personal Care: See all 9:

Applicant contends that its prior registration, coupled with its long period of continuous use, high volume and dollar amount of sales, and evidence of infringing use of Applicant's mark by competitors constitutes a *prima facie* showing of acquired distinctiveness under Section 2(f).

Having carefully reviewed the totality of the evidence of record, we agree with the Examining Attorney that Applicant has failed to establish acquired distinctiveness of its proposed mark within the meaning of Section 2(f). At the outset, we note that Applicant cannot rely on its claim of ownership of Registration No. 2733754 because that registration has been cancelled. It is well established that a claim of acquired distinctiveness cannot be based on a registration that is cancelled or expired. *See e.g., In re BankAmerica Corp.*, 229 USPQ 852, 853 (TTAB 1986).

Further, we observe that for proposed marks that are not inherently distinctive because they consist of product designs, evidence of five years' use considered alone is generally not sufficient to show acquired distinctiveness. *See In re R.M. Smith, Inc.*, 734 F.2d 1482, 222 USPQ 1, 3 (Fed. Cir. 1984) (eight years of use not sufficient to establish distinctiveness in configuration of pistol grip water nozzle for water nozzles); *Nextel Commc'ns, Inc. v. Motorola, Inc.,* 91 USPQ2d 1393, 1401 (TTAB

2009) (in relation to an alleged mark consisting of the sound emitted by cellular telephones in their normal course of operation, the Board noted that "the evidence required [to establish acquired distinctiveness] is in proportion to the degree of nondistinctiveness of the mark at issue" and, therefore, "even long periods of substantially exclusive use may not be sufficient to demonstrate acquired distinctiveness"). *See also* Trademark Rule 2.41(b) (noting that, in some situations, an affidavit of five years of use may not be sufficient and "further evidence may be required.").

In this case, however, Applicant has sold its goods for over ten years, and Applicant has provided several years of U.S. sales data regarding volume and dollar figures of its base assembly product. We acknowledge that these figures are not insubstantial. Nonetheless, "mere figures demonstrating successful product sales are not probative of purchaser recognition of a configuration as an indication of source." *Stuart Spector Designs Ltd. v. Fender Musical Instruments,* 94 USPQ2d 1549, 1572 (TTAB 2009) (citing *Braun Inc. v. Dynamics Corp.*, 975 F.2d 815, 24 USPQ2d 1121, 1133 (Fed. Cir. 1992)); *see In re Bongrain Int'l (Am.) Corp.*, 13 USPQ2d at 1729 (growth in sales may be indicative of popularity of product itself rather than recognition of the asserted mark as denoting origin). A high volume of sales does not always amount to a finding of acquired distinctiveness, especially in applications involving marks comprised of product designs. *See e.g., Goodyear Tire & Rubber Co. v. Interco Tire Corp.*, 49 USPQ2d 1705 (TTAB 1998) ($56,000,000 sales revenues and 740,000 tires sold insufficient to show acquired distinctiveness

of tire tread design). This is especially true given Applicant's lack of submission of advertising expenditures identifying types of media through which its goods are advertised and attaching typical advertisements for Applicant's goods, which Trademark Rule 2.41(a) indicates should be provided, so that we may determine the nexus, if any, between the sales success and advertising efforts and Applicant's product design.

In a product design application, the critical inquiry is whether the product design is being used and advertised in the marketplace in such a manner that consumers associate the product design with a particular applicant, and therefore view the product as emanating from a single source. *See Stuart Spector,* 94 USPQ2d at 1572 ("To determine whether a configuration has acquired distinctiveness, advertisements must show promotion of the configuration as a trademark."). Sample advertisements showing "look-for" types of promotional efforts from an applicant may be particularly probative on the issue of whether a product design functions as a source identifier. "'Look for' advertising refers to advertising that directs the potential consumer in no uncertain terms to look for a certain feature to know that it is from that source. It does not refer to advertising that simply includes a picture of the product or touts a feature in a non source-identifying manner." *Id.*

The record here, however, is devoid of "look for" advertising.[6] *Cf. Owens-Corning,* 227 USPQ at 423-24 (describing effective "look for" advertising). Instead, Applicant submitted the product packaging and advertisements of three of its competitors, rather than its own. Such evidence does not show efforts or success by Applicant to educate consumers that its own base assembly design functions as a source indicator. We do not see how competitors' assertions in their advertisements claiming that their respective replacement parts are "designed to fit" various specified models of Applicant's electric toothbrushes demonstrates that the design of the base assembly of Applicant's products serves as an indicator of source.

Applicant's purported evidence of copying or infringing uses of its base assembly design also falls short because "[c]opying is only evidence of secondary meaning if the defendant's intent in copying is to confuse consumers and pass off his product as the plaintiff's." *Id.* at 1575 (citation omitted).[7] With regard to the product packaging samples noted above from two competitors, these competitors do appear to be manufacturing toothbrush replacement parts compatible with Applicant's own electric toothbrushes. However, in the context of this *ex parte* proceeding, the record is insufficient to show that these third parties intended to copy Applicant's base

---

[6] An applicant's failure to provide any "look for" advertising, though, is not dispositive on the issue of whether a product design has acquired distinctiveness if the applicant can demonstrate that it is "industry practice to recognize certain configurations as source indicators." *Stuart Spector*, 94 USPQ2d at 1574 (citing *Yamaha*, 6 USPQ2d 1001 and *In re Black & Decker Corp.*, 81 USPQ2d 1841 (TTAB 2006)). The record in this case, however, is also devoid of any evidence that it is industry practice to recognize a "base assembly" of a "toothbrush head for electric toothbrushes" as a source indicator.

[7] In the context of an *ex parte* proceeding where there is no "defendant," we construe this language as referring to copying by competitors.

assembly design for the purpose of "confus[ing] consumers and pass[ing] off" their own products as those of Applicant. *See id*. This is evident by the fact that the product packaging clearly touts the ability of the competitors' own toothbrush replacement parts to serve as product substitutes for Applicant's base assembly product ("Compare to Philips Sonicare e Series Replacement Brushheads [i.e., base assembly product]" and "Designed to fit the following Philips Sonicare power brush handles."). As to the Amazon display, it references the "Philips Sonicare" mark and has a picture of what Applicant says is its product. While this may arguably provide the basis of a court claim for infringement of the word mark(s) Applicant uses to identify its products and/or a claim for reverse passing-off by using a photo of Applicant's product, this does not show that the design at issue has acquired distinctiveness.

In view of the foregoing, we agree with the Examining Attorney's determination that Applicant has failed to make a *prima facie* showing under Section 2(f) that its product design is recognized by consumers as a trademark.

**DECISION**: The refusal to register under Sections 1, 2 and 45 of the Trademark Act on the ground that Applicant's proposed mark fails to function as a trademark because it is a nondistinctive product design, and Applicant's claim of acquired distinctiveness under Section 2(f) is insufficient is affirmed.